JOSEPH TURGEON *vs.* HARRY E. BEAN.

York.   Opinion June 6, 1912.

*Arrest.   Civil Arrest.   Bankruptcy.   Exemptions.*

Action on the case for false imprisonment.   The plaintiff was arrested on July 16, 1910, on a process issued by a disclosure commissioner upon an execution in favor of the defendant on a debt provable and dischargeable in bankruptcy, and was committed to jail.   On July 18, 1910, upon his own petition, he was duly adjudicated a bankrupt, but the record does not show that he has ever obtained his discharge.   He was held in jail until November 24, 1910, when he was released by the United States District Court upon habeas corpus proceedings.   It is admitted that the arrest and commitment of July 16, 1910, and his detention until July 18, 1910, when his petition in bankruptcy was filed, were legal, but the plaintiff contends that his detention after that time was illegal.

1.   That as a matter of statutory construed Section 9 of the Bankruptcy Act of 1898 which provides that a bankrupt shall be exempt from arrest upon civil process should be constructed to mean exemption from arrest made after bankruptcy petition is filed and does not apply to an arrest on civil process properly made before the filing of the petition.

2.   That in this case, however, the plaintiff having been granted his release by a court of competent jurisdiction, the question is res judicata, and the liability of the defendant has become fixed.

On report.   Judgment for plaintiff.

Action on the case to recover damages for an alleged false imprisonment of the plaintiff in the common jail at Alfred in the County of York.   Plea, the general issue with a brief statement alleging in substance that the plaintiff was arrested and committed to jail on a process issued by a disclosure commissioner upon an execution in favor of the defendant.   At the conclusion of the evidence, it was agreed that the question of liability should be determined by the Law Court on report of the evidence, and that a special finding as to damages in case of liability be submitted to

the jury. A special finding was then rendered by the jury assessing damages in favor of the plaintiff in the sum of·$298. It was then agreed that if the Law Court held that the defendant was liable that judgment should be for the plaintiff for $298 and costs; otherwise judgment should be for the defendant.

*Cleaves, Waterhouse & Emery, and Ruggles S. Higgins,* for plaintiff.

*Louis B. Lausier,* for defendant.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

CORNISH, J. This is an action on the case for false imprisonment. The plaintiff was arrested on July 16, 1910, on a process issued by a disclosure commissioner upon an execution in favor of the defendant on a debt provable and dischargable in bankruptcy, and was committed to jail. On July 18, 1910, upon his own petition, he was duly adjudicated a bankrupt, but the record does not show that he has ever obtained his discharge. He was held in jail, the defendant paying the necessary charges therefor, until November 24, 1910, when he was released by the United States District Court upon habeas corpus proceedings brought by himself. *Turgeon v. Emery,* 182 Fed., 1016. This suit followed. It is admitted that the arrest and commitment of July 16, 1910, and his detention until July 18, 1910, when his petition in bankruptcy was filed, were legal, but the plaintiff contends that his detention after that time was illegal. This raises the question whether mere adjudication in bankruptcy entitles a bankrupt to release from arrest made upon a provable and dischargeable claim prior to the filing of petition, and that is a question of statutory construction.

Were this question open in this case we would have no hesitation in holding that mere adjudication in bankruptcy does not ipso facto, entitle the bankrupt to release under such circumstances.

The obvious purpose of the bankrupt law, speaking in general terms, is the uniform and equal distribution of a bankrupt's assets among his creditors. Its benefits are two fold; on the one hand the creditors share equally in the payment or partial payment of their claims, except so far as matured liens and certain preferences are

concerned, and on the other, the debtor, in the absence of fraud, is relieved from the harassment of obligations that he cannot meet.

Under the Constitution and Laws of the United States, the Federal Courts are given exclusive powers in matters of bankruptcy and in the enforcement of these powers their jurisdiction is supreme. These powers, however, are statutory in their origin, and an interference with the processes of the State courts is not to be presumed. As Judge Story said: "Certainly the Courts of the United States have no authority to intermeddle with State process, except in cases, where, either expressly or by necessary implication, such an authority is given by law. The State Sovereignty is supreme within its own sphere; and the process thereof must have full effect and operation until displaced by some other Constitutional authority, which controls or qualifies it." In re Cheney, Fed. Cas. No. 2636.

A decree in bankruptcy affects the bankrupt's property but not his person, it dissolves attachments made within a certain prescribed time and vests in the assignee or trustee all the bankrupt's property not exempt. An arrest on execution creates neither an attachment nor a lien. It simply affords the creditor a possible method of obtaining payment, but all the unexempted property passes from the bankrupt debtor whether he is under arrest or not.

Under the Bankruptcy Act of 1841, which contained no provision as to immunity form arrest during the pendency of proceedings, the court uniformly refused to grant a release on habeas corpus to a bankrupt who had been arrested before petition filed, but had not obtained his discharge. In re Hoskins, 12 Fed Cas. No. 6712, Ex parte Rank. 20 Fed. Cas. No. 11566, In re Comstock, 6 Fed. Cas. No. 3073, In re Cheney, 5 Fed. Cas. No. 2636. Judge Story in the case last cited in a characteristically able and exhaustive opinion, met and answered all the contentions raised in favor of the petitioner, and upon the legal effect of merely filing a petition in bankruptcy said: "Now upon what ground can it be said, in this case, that the bankrupt has a clear title to be released from imprisonment? He has not as yet obtained any certificate of discharge from the debt, or his other debts. Non constat, that he ever will obtain such a certificate. If he never does obtain it, he must still remain liable for the debt, and be bound by the execution to

satisfy it. How then can he now be entitled to be discharged from imprisonment under the execution, since the debt is not satisfied and discharged, and it rests in contingency, whether it ever will be by any proceedings under the bankruptcy." This decision is cited with approval in *Craggin* v. *Bailey,* 23 Maine, 104.

The Bankruptcy Act of 1867 provided that "No bankrupt shall be liable to arrest during the pendency of the proceedings in bankruptcy in any civil action, unless the same is founded on some debt or claim from which his discharge in bankruptcy would not release him." Sec. 26.

The Federal Courts in a long line of decisions have held in the most emphatic language that this section did not relieve from arrest one who was legally in custody upon civil process at the time the petition in bankruptcy was filed. In re Walker, 1 Lowell, 222, 17 Fed. Cas. No. 9642; *Hazelton* v. *Valentine,* 1 Lowell, 270, 11 Fed. Cas. No. 6287; *Minan* v. *Van Nostrand,* Dist. Ct., 1 Lowell, 458, 17 Fed. Cas. 9642; *Same* v. *Same,* (Circuit Ct.), 1 Holmes, 251; See also *Brandon Nat. Bank* v. *Hatch,* 57 N. H., 401; *Stockwell* v. *Silloway,* 100 Mass., 287; *Hussey* v. *Danforth,* 77 Maine, 17.

The Bankruptcy Act of 1898, Sec. 9, provides that "A bankrupt shall be exempt from arrest upon civil process, except," etc. We are unable to discover any essential difference between this section and section 26 of the Act of 1867 before referred to. Both are designed to cover the same situation, that is, immunity from arrest made after petition filed. In one case the prohibition is expressed affirmatively, in the other negatively, but the meaning of both is the same. So too, General Order No. 27, established by the U. S. Supreme Court in connection with the Act of 1867, covers the same ground as No. 30, 89 Fed. Rep. XII, in connection with the Act of 1898. Both provide for the production of the bankrupt upon habeas corpus before the court to facilitate the bankruptcy proceedings, and his restoration to custody, if arrested before proceedings begun, and his release if arrested after, upon a provable and dischargable debt.

Moreover, in construing the Act of 1898, no little weight should be given to the fact that the exemption from arrest clause in the Act of 1867, was frequently and clearly interpreted by the courts to be confined to subsequent arrests, and when this clause was

placed in the Act of 1898 in substantially the same language, Congress must be presumed to have intended to adopt the former language as interpreted by the court. Had it wished to extend it beyond the limit already placed upon that section, and to release the bankrupt from detention as well as arrest, it should have expressed itself in clear and unmistakable terms leaving nothing to inference. In other words, the Act of 1898 is to be construed in the light of the Act of 1867 plus the decisions thereunder.

In the first case arising under the Act of 1898, In re Claiborne, (Dist. Ct. N. Y. 1901) 109 Fed. 74, Section 9, was construed as had been section 26 of the Act of 1867, and following the decisions before cited, Judge Browne refused the petitioning bankrupt a discharge from custody. In the second case, *People Ex Rel. Taranto* v. *Erlanger,* (Dist. Ct. N. Y. 1904) 132 Fed. 883, the opposite view was taken by Judge Holt and the debtor was discharged. The opinion seeks to find a distinction between the two sections and is based upon the idea that detention under an arrest made prior to bankruptcy is equivalent to an actual arrest made subsequent thereto. This definition of the term "arrest" is not only novel, but is in conflict with the interpretation of the word as given by text writers and courts. Bouvier Law Dic. "Arrest." Jacobs Law Dic. "Arrest" Words and Phrases, Vol. 1, p. 501, *French* v. *Bancroft,* 1 Met., 502. To give section 9 the interpretation contended for would make it read, "A bankrupt shall be exempt from arrest upon civil process made after bankruptcy proceedings begun, and from detention under arrest on such process made prior thereto." This is further than Congress has ever seen fit to go and this result seems to be reached by the court in the Taranto case by judicial legislation rather than by judicial construction.

The third case, was that out of which the case at bar arose. *Turgeon* v. *Emery,* (Dist. Ct. Maine 1910) 182 Fed. 1016, where the court, without discussing the question, accepted the Taranto decision in preference to the Claiborne, saying, "I am constrained to believe this decision follows the spirit and meaning of the bankrupt law and should be followed. I make this decision with some hesitation after so eminent an authority as Judge Addison Browne in the Claiborne case, has given a different construction of section 9 of the Bankrupt Act, taken in connection with General Order 30."

Upon the fundamental legal proposition therefore the Federal Courts are at variance, but upon both reason and authority we think the construction placed upon the statute in the Claiborne case is the sound one and that the discharge under such circumstances should be refused.

It is for that reason that we have devoted more space to this question than the situation would otherwise warrant, because, whatever our view upon this point as an academic legal proposition, we feel that in the case at bar it is res judicata, a court of competent jurisdiction, with the same parties before it having in fact granted a discharge to this plaintiff. *Turgeon* v. *Emery,* 182 Fed. 1016, supra. By that decision this court feels itself bound in these proceedings.

"It is an elementary principle of high importance in the administration of justice that the judgment or decree of a court of competent jurisdiction is final, as to the subject matter determined and that it cannot be opened before any court of concurrent jurisdiction." *Emery* v. *Goodwin,* 13 Maine, 14. "It may also be laid down as a general principle that a prior decision is conclusive upon all matters and issues which were in fact there tried and decided in all subsequent litigation between the same parties or their privies, even in a suit which is not for the same cause of action." *Corey* v. *Independent Ice Co.,* 106 Maine, 485, and cases cited. The case at bar falls within these elementary principles. The issue in the District Court was the legality of Turgeon's detention in jail. Notice of the hearing was served on the creditor, Bean and on his attorney of record, by order of court and the counsel was present at the hearing and resisted the discharge. No appeal was taken from the decision although appeal would lie. Under these circumstances the question of illegal restraint is res judicata. It was determined by a court of competent jurisdiction after due notice to all parties in interest and the proceedings were regular. By that determination no appeal being taken the defendant must abide. It is true that in habeas corpus proceedings, the doctrine of res judicata at common law does not apply in so far as a refusal to discharge no one writ is no bar to the issuance of a new writ. Ex parte Partington, 13 M. & W., 679; *Cox* v. *Hakes,* 15 App. Cas. 506; *Bradley* v. *Beetle,* 153 Mass., 154. But it is equally true that a discharge of a prisoner stands on a different footing and that it constitutes a determination

that at the time he was improperly restrained and cannot be rearrested without some new circumstance to authorize the arrest which did not exist when the discharge was granted.    21 Cyc. p. 349. McConologues case, 107 Mass., 154, 171.

In *Castor* v. *Bates,* 87 Mich., 285, 86 N. W., 811, this precise question arose and it was held that judgment for the plaintiff in habeas corpus proceedings in which the person causing the arrest appeared and was heard is res judicata in an action by such plaintiff against such person for false imprisonment.

The liability of the defendant having therefore been already determined, final judgment must be rendered for the plaintiff in the sum of two hundred and ninety-eight dollars and costs in accordance with the special finding of the jury on the question of damages.

*So Ordered.*