ROBERT H. MOTTRAM, PETR. FOR WRIT OF ERROR
CORAM NOBIS
*vs.*
STATE OF MAINE

Cumberland.   Opinion, May 8, 1964.

*Thomas F. Monaghan,*
*Earl J. Wahl,* for Plaintiff.

*John W. Benoit, Asst. Attorney General,* for State.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN,
SIDDALL, MARDEN, JJ.

SULLIVAN, J.   On December 10, A.D. 1962, Robert H.
Mottram filed in the Superior Court his petition for a writ
of error *coram nobis* under the provisions of R. S., c. 126-A,
additional, P. L., 1961, c. 131, to vacate the judgment of
conviction rendered against him at that court in October,
1960, for the crime of larceny.

The Petitioner complains of having been denied his right
to a fair trial and to equal justice at his jury trial in 1960

and alleges several particulars to instance such asserted abuses.

The State opposed Mottram's petition and moved for its dismissal. The petition and motion were heard by a Justice of the Superior Court who dismissed the petition and denied the writ of error *coram nobis.* Petitioner prosecutes this appeal from that decision.

Petitioner's statement of his points of appeal is restricted by him to 2 grievances:

> "1.   The Court erred in failing to appoint counsel to represent Robert Mottram at his hearing on the Petition For a Writ of Error Coram Nobis.

> "2.   The Court erred in its determination that the evidence presented by Robert Mottram was not newly discovered."

The Petitioner has abandoned his first point of appeal by his declination to argue or support it. The contention has no merit. The Petitioner in self advocacy supplied his own petition and in writing thus advised the court:

> "That thru circumstances he now elects to act as his own Counsel in re — his Petition."

At no time did the Petitioner profess his indigency. *Nadeau* v. *State,* 159 Me. 260, 264.

Several weeks prior to the hearing upon the petition the justice presiding wrote to Mottram, as follows:

> "According to a Motion appearing to be executed by you re Petition for Writ of Error Coram Nobis filed in said Clerk's office December 10, 1962 you in substance stated that you elect to act as your own counsel with respect to said petition. In the event you desire counsel to represent you on March 5, 1963 in re Motion to Dismiss and do not have financial means to employ counsel and desire the Court to appoint counsel for you, advise at once."

At the commencement of the hearing upon the petition for the writ of error *coram nobis* the following dialogue appears in the record:

"THE COURT: The matter for consideration to-day is a petition for a writ of error coram nobis by Robert H. Mottram against the State of Maine. Mr. Mottram, I understand that you do not have an attorney?

"MR. MOTTRAM: That is correct.

"THE COURT: And that you are representing yourself?

"MR. MOTTRAM: That's correct.

"THE COURT: Is that correct?

"MR. MOTTRAM: Yes."

The notice of appeal in this case was signed by Mottram, "Petitioner, Pro Se."

Petitioner's first point of appeal is devoid of merit.

The 2nd point of appeal reads as follows:

"2. The Court erred in its determination that the evidence presented by Robert Mottram was not newly discovered."

This 2nd point of appeal as phrased must be deemed inept. Since 1941 (P. L., 1941, c. 203) a statutory law has afforded a specific and distinct process for the obtaining of new trials on the ground of newly discovered evidence. R. S., c. 106, § 15. R. S., c. 126-A, additional, P. L., 1961, c. 131 (now repealed), the act under which Petitioner sought relief in the instant case contains this preclusion:

Sec. 1. - - - "The remedy of coram nobis provided in this chapter is not a substitute for nor does it affect any remedies which are incident to the proceedings in the trial court, or any other review of the sentence or conviction."

Petitioner could not have been aggrieved by a determination of the court that petitioner's evidence was not newly discovered in the conventional significance of such a classification for had the justice concluded to the contrary mere newly discovered evidence would not sustain the issuance of a writ of error *coram nobis*. *Dwyer* v. *State*, 151 Me. 382, 395; *Coram Nobis* by Eli Frank, § 3.02 (c) and authorities; R. S., c. 126-A additional, *supra*.

Lest it may appear, however, that this court is extending to this Petitioner only technical and summary consideration additional comment seems appropriate.

In 1958 Petitioner had been tried and adjudged guilty of the same charge of larceny which is involved here. In 1960 after hearing upon a writ of error *coram nobis* such guilty judgment had been recalled by the Superior Court. Petitioner had been retried and again convicted in October, 1960. The petition in the case at bar seeks a recall of that latter judgment. Prior to the trial of 1958 Petitioner and others for the prosecuting officials had submitted themselves to interviews which were vocally recorded upon 6 double records. The Petitioner in the court below at his hearing upon the instant petition complained that the recollective testimony given by certain of the State's witnesses at his second trial in 1960 was contrary to statements contained upon the sound recordings of the interviews participated in by the Petitioner and others in 1958. Petitioner here protests that the machine supplied for petitioner's trial counsel by the State before and during the period of the petitioner's second trial for reproducing the interviews was grossly inadequate and rendered inaudible 90% of the taped conversation. The State at such second trial did not offer the sound recordings in evidence. Petitioner sought to introduce them *in toto* at that trial but failed because the interviews were concededly an admixture of the admissible and inadmissible without ready and facile provision for separa-

tion. *State* v. *Mottram*, 158 Me. 325, 335. Petitioner now contends that by the judicious use of the tapings had they been available to him and the jury in audible rendition before and during the second trial he could have demonstrated the perjury or at least the objective untruth of critical State testimony. Suffice it to say that the decided case of *State* v. *Mottram*, 158 Me. 325, 335, and the transcript in the instant case reveal that the Petitioner and his trial counsel at the second trial were accorded plentiful access to the sound recordings by court and State counsel. The reproducing device the use of which the State placed at the convenience of Petitioner and his counsel was the same which had been utilized by Justice Pomeroy when not long before Petitioner's second trial that justice had played at least one-half of the recording discs at the *coram nobis* hearing of this Petitioner in 1960. The Petitioner conducting the *coram nobis* hearing of 1960 without counsel had been present in court while Justice Pomeroy listened to the "playbacks." Petitioner does not represent that the discs played by Judge Pomeroy were not audible and intelligible but rather that he, the Petitioner, was sitting in the court room too far away from such reproduction of the interview to hear it all. Petitioner's counsel of the second trial acknowledges that the State had offered to him full resort to the recordings and spent some hours listening to much of them. He asserts, however, that the audibility was only 10%. No complaint was raised by the Petitioner or by his counsel concerning lack of time or of opportunity to hear the records. All pertinent cross examination of State witnesses was the respected right of the Petitioner during his second trial. Petitioner had been present and collaborated in the making of more than half of the sound recordings. Neither he nor his trial counsel requested leave of court or cooperation of State counsel to correct any inaudibility in sound reproduction. With the Petitioner indisputably present in the court room at his second trial State's counsel, Peti-

tioner's former attorney and the court discoursed as follows:

State's attorney:

" - - - - If he (Mottram's counsel) wishes to play them back again, or Mottram for any reason wishes to listen to them, they are available for counsel to use, but I would object for these reasons to the entire records being played on a machine to the jury."

- - - - - - - - - - - - - - - - - - - - - - - - -

Mottram's counsel: "Now, as to the contention that my Brother has, if Your Honor please, I agree with my Brother that there are many immaterial and irrelevant matters on the records. I also am forced to agree with him they are not completely intelligible, that I had a difficult time understanding and following some parts, but on some of the records I found some vital information that I think would be of value to the jury.

THE COURT: "If those vital parts that you refer to could be separated from that which is not intelligible and that which is not material and separated from matters that perhaps might be matters that would offend the issues in this case or might tend to be confusing rather than aiding, then I should admit that part of the record, if it can be separated, that you desire and which you think would be helpful to the defense in this case; but if it is all intermingled so that you cannot separate it, then I would be compelled to exclude the use of those records for the reasons that I have just stated." *State* v. *Mottram,* 158 Me. 325, 336, 337.

Petitioner's counsel in the case at bar states in his brief:

"This case today, before this tribunal is a cumulative part of State v. Mottram found in 155 Me. page 394 and State v. Mottram found in 158 Me. page 325."

Testifying in the present case counsel who had defended Mottram at the latter's second trial said:

> " - - - - I did ask Mr. Chapman, (State's attorney at the second trial) and I believe the Court also, that I wanted some time with you (Mottram) to listen to the records with me, and they told me that they would be very glad to co-operate - - - - - "

Petitioner at his second trial recited his recollection of some of the conversation during his interview recorded upon the discs. His former trial counsel explains that at the second trial of this Petitioner the introduction of the sound recordings was sought for the purpose of impeaching the credibility of a police officer and one or two more of the witnesses who had testified at the call of the State in the course of the second trial.

If it be the theory of this Petitioner, howsoever untenable (*Shalit* v. *Shalit*, 126 Me. 291, 294), that some of the conversation memorialized by the sound recordings constitutes newly discovered evidence solely because Petitioner, belatedly dedicating himself after the conclusion of the second trial, only then came to evaluate its impeaching potency, nevertheless such evidence would be incompetent in this *coram nobis* undertaking because of the restrictive provisions of R. S., c. 126-A, additional, *supra*, and because, if newly discovered evidence obtain, the special remedial process of R. S., c. 106, § 15 is the prescribed operative procedure. As this court said in *Dwyer* v. *State*, 151 Me. 382, 395:

> " - - - - The proceeding, on the writ, (coram nobis), is not to revise a decision made by the court or jury. It is not an appeal, or a motion for a new trial or newly discovered evidence, or a claim that the original record is false. - - - - "

See *annotation, 33 A. L. R.,* 84, 85.

" - - - - and the writ (coram nobis) will not lie where the party complaining knew the fact complained of, at the time of, or before trial, or, by the exercise of reasonable diligence, might have known it, or is otherwise guilty of negligence in the matter." *49 C. J. S., Judgments,* § 312, P. 564. See, also, *State* v. *Hudspeth,* 191 Ark. 963, 88, S. W. (2nd) 858, 861; *Coram Nobis,* Eli Frank, § 3.01, P. 23.

The mandate must be:

*Appeal denied.*