STATE OF INDIANA *v.* GURECKI.

[No. 30,836. Filed March 1, 1966.]

*John J. Dillon*, Attorney General, and *Raymond I. Klagiss*, Deputy Attorney General, for appellant.

*Stanley Gurecki, pro se.*

ARTERBURN, J.—This is an appeal by the State from the granting of a writ of error coram nobis.

The action was instituted prior to the promulgation of Rule 2-40. The appellee was convicted of burglary in 1932 upon a plea of guilty. This conviction is attacked in the writ of error coram nobis on the ground first, that the plea of guilty was not voluntary, but coerced by beatings of a deputy sheriff. Second, that the appellee's constitutional right to counsel was violated by the trial judge's refusal to appoint counsel.

The record shows that appellee has had a number of involvements with the law since 1932; that in 1938 he was convicted of a second felony (automobile banditry) and in 1951 he was convicted of a third felony (assault and battery with intent to commit a felony) and found to be an habitual criminal and sentenced to life imprisonment.

The issue here is plainly whether or not a person who has been convicted of a major felony over thirty years ago (1932) on his own unsupported statement that he was "beaten up" by the sheriff's deputy and placed in fear and deprived of counsel at the time of his conviction may now have those matters reviewed. The record shows that the sheriff in 1932 was Thomas McDonald. He is now 82 years old. He stated that he had no deputy by the name of Baumgartner at that time who the appellee states beat him up but that, as he remembers, there was a person on the city police department at one time by that name. The sheriff denies emphatically that any beatings took place. The testimony further is that the court reporters at the time of the conviction of the appellee are now dead and none of the court's shorthand notes are available for that date. The judge who presided at the time of the appellee's plea of guilty is still alive and he testified that it was always his practice to inform the defendants in criminal cases that they were entitled to counsel, and he is certain in his own mind that he did so in the appellee's case.

The evidence further shows that the defendant was not a pauper and not entitled to counsel at taxpayers' expense. The appellee at the time was 18 years of age, his father was present with him in court and the appellee testified that he had some money of his own. The evidence further shows that the appellee's father, who is legally responsible for his support and maintenance, was employed at the time by the Nickel Plate Railroad. No representation was made at the time to the court that there was any lack of funds for appellee's defense. The evidence shows that the appellee's father conferred with the judge prior to any plea of guilty.

The record further shows that at the time of appellee's conviction as an habitual criminal in 1951, he had trial counsel. It is as a consequence of that conviction that appellee wishes to nullify the conviction of 1932. At the time of the trial of the charge of being an habitual criminal, if any of the

prior convictions were invalid, including that of 1932, trial counsel could have raised such issue.

In Liford v. State (1965), 247 Ind. 149, 210 N. S. 2d 366, we stated that a client is bound by the acts or non-acts of his attorneys whether he be rich or poor, and he cannot ■ accept the benefits thereof and reject the undesirable acts or non-acts of his attorneys if there is no proof that the attorney was incompetent.

In re Lee (1964), 246 Ind. 7, 198 N. E. 2d 231.

The burden of proof in a coram nobis proceeding is on the petitioner—the appellee in this case. He must produce the positive evidence to overthrow an adjudication of con- ■ viction of a crime. There is no presumption that a trial court errs. *Kennedy* v. *State* (1953), 232 Ind. 695, 116 N. E. 2d 98; *State* v. *Lindsey; State* v. *Carroll* (1952), 231 Ind. 126, 106 N. E. 2d 230; *Sells* v. *State* (1952), 231 Ind. 137, 107 N. E. 2d 264.

It is argued that "it is an undue hardship to place the burden on the petitioner" in coram nobis proceedings. On the other hand, we point out that it is an undue hardship to place the burden upon the State and the people of the State of Indiana to continually keep proving in one proceeding after another from day to day for more than thirty years, as records disappear and as witnesses die, that a convicted defendant is still guilty. After such lapse of time must a court accept as the truth the unsupported word of a thrice-convicted felon against those of surviving witnesses and overturn a judgment rendered when more credible evidence was available? The mere question answers itself.

In the case of *Schmittler* v. *State* (1950), 228 Ind. 450, 465, 93 N. E. 2d 184, 190, we have stated:

"There are occasions when testimony cannot be directly controverted, as would be the case if a convicted man's former attorney had died, was otherwise unavailable, or did not recollect the facts. If the uncorroborated statements of a man so vitally interested in the result must be accepted

as true merely because such assertions have not been expressly denied, and when other facts and circumstances point in a different direction, it would obviously furnish a ready avenue of escape for any and all who had been convicted and imprisoned."

It is urged that the recent decisions of the United States Supreme Court, *Gideon* v. *Wainwright* (1963), 372 U. S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, 93 A. L. R. 2d 733; *Powell* v. *Alabama* (1932), 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527; *Carnley* v. *Cockran, Jr.* (1962), 369 U. S. 506, 82 S. Ct. 884, 8 L. Ed. 2d 70, operate retroactively; that since those cases the State of Florida has released 950 convicted felons from the Florida penitentiary.

In the recent case of *Tehan, Sheriff* v. *United States ex rel. Shott, Jr.* (U. S. Jan. 19, 1966), 86 S. Ct. 459 the United States Supreme Court considered a retroactive application of its recent decision that the State, through its prosecuting attorney, may not comment upon the failure of a defendant in a criminal case to testify. It held in that case that its decision did not have a retroactive effect. However, it did state that the question of whether a newly announced constitutional principle should have a retroactive or merely prospective effect required the court to " 'weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' " Our position on this Court is that if the United States Supreme Court intends for a newly announced constitutional principle or interpretation to have retroactive effect and thus free prisoners convicted for as long as thirty years or more, as in this case, then it must so announce plainly and unequivocally, and take the responsibility for turning loose thousands of convicted felons against whom now no proof of their crime exists, although at the time there was sufficient proof to convince twelve jurors or the defendant himself of his guilt on a plea of guilty. We see no reason for changing a rule of law which provides the burden of

proof shall be upon the petitioner, nor is there any reason to change a rule of law that presumes a trial court committed no error until there is positive proof thereof.

However, regardless of such viewpoint, there is a strong and conclusive reason why the appellee is not entitled to a writ of error coram nobis in this case.

On various prior occasions the appellee has attacked the validity of the various convictions. Among these proceedings is *Gurecki* v. *Dowd*, Cause No. 27545-C, a petition for a writ of error coram nobis. In another cause with like title (Cause No. 27264-C) he asked for a writ of habeas corpus, and in a third with a like title (Cause No. 27958-C) he asked for a second writ of habeas corpus. The present petition fails to set forth these previous adjudications and fails to show why the issue raised here, some thirty-five years later, could not have been presented in the prior adjudications, and if it was presented, that it was determined adversely to the petitioner. It is a general principle of law that res judicata applies in such proceedings and all matters which might have been litigated are concluded. A party may not try his case endlessly and piecemeal. There must be an end to litigation at some point. 17 I. L. E., Judgments, Sec. 380, p. 416.

Burns' Ind. Stat. Anno. §§ 9-3302, 9-3303 and 9-3304 (1956 Repl.) provide:

"*9-3302. Lack of jurisdiction—Writs of error coram nobis—Prohibition.*—No court shall have jurisdiction to entertain any proceeding for writ of error coram nobis in which the defendant alleges matters or issues which have been or might have been adjudicated in a prior proceeding for writ of error coram nobis brought by the defendant, and a writ of prohibition shall issue to prevent any such court from so assuming jurisdiction.

"*9-3303. Judicial notice—Trial courts—Supreme Court.* Each trial court shall take judicial notice of all pleadings and its record from the time of filing of the affidavit or indictment upon which a conviction may be had to and including any proceeding of record had attacking the

validity of any judgment of conviction, and the Supreme Court of the state of Indiana shall take judicial notice of any matters judicially noticed by the trial court, and shall take judicial notice of its own records, any transcript of evidence on file with it or its clerk and its own opinions, concerning any proceeding had by the defendant in said Supreme Court concerning the validity of his conviction, in any appeal from any judgment entertained in any coram nobis proceeding, or any proceeding for a writ of prohibition.

"*9-3304. Proceedings for writs of habeas corpus—Res adjudicata.*—The common law rules of res adjudicata shall apply to proceedings for writs of habeas corpus in criminal matters."

It is difficult for us to understand how an action of habeas corpus could be brought against the Superintendent of the prison in which the petitioner was confined without questioning any relevant grounds under which his imprisonment was authorized, including the 1932 conviction. If it was not considered, it could have been or should have been, and therefore, under the principles of res judicata, it is barred from any further reexamination. The same principle is applicable to the conviction of being an habitual criminal as stated previously.

The judgment granting the writ of error coram nobis is reversed, as well as the holding that the conviction of 1932 is null and void, and the trial court is directed to enter judgment denying the writ of error coram nobis.

Myers, C. J., Rakestraw and Jackson, JJ., concur. Achor, J., not participating.

NOTE.—Reported in 214 N. E. 2d 392.