Robert H. MOTTRAM

v.

STATE of Maine et al.

Supreme Judicial Court of Maine.

March 19, 1970.

Pierce, Atwood, Scribner, Allen & McKusick, by S. Mason Pratt, Jr., Portland, for plaintiff.

Garth K. Chandler, Asst. Atty. Gen., Augusta, for the State.

Before WILLIAMSON, C. J., and MARDEN, DUFRESNE, WEATHERBEE, and POMEROY, JJ.

WEATHERBEE, Justice.

The matter is an appeal from the dismissal of a petition for the writ of habeas corpus brought under 14 M.R.S.A. § 5502 et seq. in which Petitioner sought to set aside his conviction in 1960 on separate counts one of which charged grand larceny and the other a prior conviction and sentence to the State Prison. As the Single Justice in the Superior Court found that all matters raised as grounds for relief in the petition either had been adjudicated previously, were trial errors not open to collateral review, could reasonably and should have been raised in an earlier petition and were thus waived, it is necessary to examine the exceptional profluence of requests for review which has followed Petitioner's conviction.

Petitioner's original conviction was reviewed and upheld by this Court in 1959. State v. Mottram, 155 Me. 394, 156 A.2d 383.

Later in 1959 a new trial was ordered when on a writ of error coram nobis a Justice of the Superior Court found that the prosecution had allowed to go uncor-

rected certain testimony of a State witness which it ought to have known was false and that it had misled the defense into believing that certain tape recordings which would have demonstrated the falsity of this testimony were inaudible.

In 1960 Petitioner was retried and again found guilty on both counts. These convictions were sustained by this Court in State v. Mottram, 158 Me. 325, 184 A.2d 225 (1962).

While this appeal was pending, Petitioner filed a petition for habeas corpus in February, 1961 asking a stay in execution of his sentence. This was denied.

In February, 1962, he brought a petition for habeas corpus contending that his sentence was in excess of the statutory maximum for grand larceny. This petition was denied.

In November, 1962 he brought a petition for writ of error coram nobis which contained some of same allegations found in the present petition. This petition was dismissed after a hearing at which Petitioner elected to represent himself and the writ was denied. This decision was sustained by this Court. Mottram v. State, 160 Me. 145, 200 A.2d 210 (1964).

On November 15, 1963 Petitioner was released to parole, his sentence having been reduced through executive clemency, but on February 12, 1965 he was returned to the prison as a parole violator.

In November, 1965 Petitioner filed a petition for the writ of habeas corpus. Counsel was appointed to assist him. That petition originally alleged several grounds (not found in the present record) which attacked Petitioner's conviction but after conference between Petitioner and his counsel Petitioner's counsel announced that Petitioner elected to assail only the circumstances of his parole violation hearing, although warned by the Single Justice (in a manner to be discussed later) that the statute required that all grounds known to Petitioner must be included in a post-convic-

tion habeas corpus action. Hearing was had, the writ denied, and the judgment of the Justice upheld on appeal. Mottram v. State, Me., 232 A.2d 809 (1967).

The present petition for the writ of habeas corpus was filed in June of 1967. Three competent counsel were appointed in succession to represent Petitioner and an amended petition was finally presented by agreement on March 10, 1969. After amendment, the petition presented the following issues:

1. Whether or not the State knowingly used perjured testimony at the trial, proof thereof being inseparably related to the use of certain tape recordings made during police interrogation of Petitioner and certain witnesses before trial;

2. Whether the State suppressed evidence at trial, this issue being also inseparably related to the use of the tape recordings and knowledge of their contents;

3. Whether the Petitioner was before trial subjected to illegal arrest, transportation, deprivation of right to counsel and right against self-incrimination, these combined issues being related to the interrogation of Petitioner before trial;

4. Whether the Petitioner was tried upon a valid grand jury indictment. (This issue, however, was waived at argument).

5. Whether the State denied Petitioner a fair and impartial trial in that the State's attorney examined the Petitioner at trial with respect to alleged crimes of which he had not been convicted;

6. Whether the State denied Petitioner a fair and impartial trial on the second count of the indictment charging prior conviction and sentence as for a felony by permitting certain jurors who had participated in the separate trial on the first count to sit in the trial of the second count;

7. Whether the Petitioner was denied trial by jury as the result of an answer

given by the Presiding Justice to a question propounded by a juror;

8. Whether the State discriminated against Petitioner in proceeding under the "habitual criminal" statute rather than the "common thief" statute, in that the former statute is alleged not to have been commonly used in Cumberland County; and in that Petitioner was "informed" that the Presiding Justice had sent word before trial that Petitioner "was only adding years to the sentence by insisting on pleading not guilty and forcing a trial", thus disclosing bias and prejudice;

9. Whether or not the "habitual criminal" statute (which was at the time of trial R.S.1954, Ch. 149, Sec. 3) was unconstitutional in that it penalized a "status" rather than a criminal offense, was void for vagueness, and provided cruel and unusual punishment by permitting a sentence for "any term of years".

The Respondents moved to dismiss asserting that all these complaints had either been adjudicated or waived in the course of prior litigation. There were introduced as exhibits all prior petitions of Petitioner as amended (except those which were withdrawn before being acted upon), the Court's decrees and portions of the testimony taken during the various hearings. The Single Justice granted the motion to dismiss and he appointed counsel to represent Petitioner in his appeal from the Justice's decision.

The Single Justice found that Petitioner's allegations did not entitle him to relief because

"1. Some allege mere trial errors not open to collateral review, or allege matters devoid of merit upon their face.

"2. Some allege matters which have finally been adjudicated in prior proceedings.

"3. All others allege matters which have been effectively waived by the conduct of the petitioner."

Particularly, the Justice found that all the claims of error made now by Petitioner were known to Petitioner on March 30, 1966, which was the time of hearing on the 1965 petition, and could reasonably have been raised then and that those which had previously been adjudicated were no longer available to him as a result of the operation of 14 M.R.S.A. §§ 5502 and 5507.

Our post-conviction habeas corpus statute (14 M.R.S.A. § 5502 et seq.) became effective on September 21, 1963. It provides a single, exclusive remedy for all collateral attacks on judgments of conviction. Green v. State, Me., 245 A.2d 147, supplemented 247 A.2d 117 (1968); Mottram v. State, Me., 232 A.2d 809, supra. Sections 5502 and 5507 create a statutory bar to repetitious petitions which is in the nature of res judicata. They read:

"§ 5502. Post-conviction habeas corpus.

Any person convicted of a crime and incarcerated thereunder including any person committed as a juvenile offender, or released on probation, or paroled from a sentence thereof, or fined, who claims that he is illegally imprisoned, or that there were errors of law of record, or that his sentence was imposed in violation of the Constitution of the United States or of this State, or that there were errors of fact not of record which were not known to the accused or the court and which by the use of reasonable diligence could not have been known to the accused at the time of trial and which, if known, would have prevented conviction, may institute a petition for a writ of habeas corpus seeking release from an illegal imprisonment, correction of an error of law of record, or to set aside the plea, conviction and sentence, provided that the alleged error has not been previously or finally adjudicated or waived in the proceeding resulting in the conviction or in any other proceeding that the petitioner has taken to secure relief from his conviction.

The remedy of habeas corpus provided in sections 5502 and 5508 is not a substitute for nor does it affect any remedies which are incidental to the proceedings in the trial court, or any remedy of direct review of the sentence or conviction but, except as otherwise provided in sections 5502 to 5508, it comprehends and takes the place of all other common law remedies which have heretofore been available for challenging the validity of a conviction and sentence and shall be used exclusively in lieu thereof. A petition may be filed at any time after the criminal conviction is final.

### § 5507. Waiver of grounds not claimed; effect of prior petition of coram nobis or error

All grounds for relief claimed by a petitioner under this remedy must be raised by a petitioner in his original or amended petition, and any grounds not so raised are waived unless the State or Federal Constitution otherwise requires or any justice on considering a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition. A petitioner who has previously entered a petition under the Revised Statutes of 1954, chapter 126–A or under chapter 129, sections 11 and 12 shall not be granted the writ under this remedy unless the court on considering the petition finds grounds for relief asserted therein which could not reasonably have been raised in said previous petition."

■ We agree with Petitioner's contentions that the doctrine of res judicata does not apply in habeas corpus proceedings. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). It is also manifest, however, that the Courts must not be clogged by repetitious presentations of identical issues. We recognized this principle in Dwyer v. State, 151 Me. 382, 120 A.2d 276 (1956) when, before the passage of our post-conviction habeas corpus stat-

ute, we reaffirmed the existence and availability of the common law writ of error coram nobis.

"As a technical proposition, habeas corpus dismissed after hearing, is not res adjudicata, (Turgeon v. Bean, 109 Me. 189, 83 A. 557), but as a practical proposition it does so operate. After one Judge has dismissed a petition, or dismissed the writ, and the same petitioner files the same or similar petition to the same or another Judge, the first decision (if known by the presiding justice) will generally be followed and dismissal ordered."

Our Legislature's first attempt to create a single statutory post-conviction remedy included a bar to repeated petitions. P.L. 1961, Chap. 131, which controlled briefly and which was repealed with the enactment of our present statute, announced the availability of a statutory writ of coram nobis and, in limiting its use to matters not previously litigated or knowingly waived, the Legislature used language identical to that found today in sec. 5502 and announced a statutory waiver almost identical to that of sec. 5507.

In enacting sections 5502 and 5507 the Legislature has made the principles of res judicata applicable to our statutory habeas corpus proceedings except in instances where state or federal constitutional considerations prevent it.

In Nadeau v. State, Me., 232 A.2d 82 (1967) we reviewed the policy considerations underlying the statutory waiver provisions and said:

"In order to prevent harassment of the courts and a piecemeal presentation of asserted grounds of relief, the statute imposes the very reasonable requirement that if multiple petitions are presented, some reason or reasonable excuse be offered for failure to assert present grounds in an earlier petition."

■ The statute imposes the same restriction as to alleged trial errors. In the

absence of deprivation of constitutionally secured rights, habeas corpus does not lie to correct trial irregularities which were not objected to at trial or raised on appeal. Bennett v. State, 161 Me. 489, 214 A.2d 667 (1965).

■ The requirement that the Petitioner allege in his original or amended petition all grounds for relief which are known to him and the denial to him of determination of issues which could have been but were not raised by him at trial or in an earlier petition is not an unreasonable burden. We know of no constitutional guarantee which demands and no consideration of justice which permits deliberate successive piecemeal attacks on a conviction.

The principles of res judicata have been applied to habeas corpus by statute in other jurisdictions without holdings of constitutional deprivation (Alberts v. Lainson, 250 Iowa 748, 94 N.W.2d 94 (1959); Miller v. Kelly, Fla., 88 So.2d 118 (1956); Bellew v. Dedeaux, 240 Miss. 79, 126 So.2d 249 (1961); State ex rel. Beckett v. Boles, 149 W.Va. 112, 138 S.E.2d 851 (1964) and some courts have also specifically applied the bar to issues which could reasonably have been but were not litigated (Macomber v. Gladden, 216 Or. 579, 337 P.2d 971 (1959); Person v. Warden, 223 Md. 657, 162 A.2d 467 (1960); State v. Gurecki, 247 Ind. 218, 214 N.E.2d 392 (1966)).

Some other states have departed from the common law rule and apply the principles of res judicata to habeas corpus by judicial decision or rule. Burleigh v. Turner, 15 Utah 2d 118, 388 P.2d 412 (1964); Guy v. Utecht, 229 Minn. 58, 38 N.W.2d 59 (1949), cert. denied, 338 U.S. 905, 70 S.Ct. 307, 94 L.Ed. 557; Williams v. Olson, 145 Neb. 282, 16 N.W.2d 178 (1944), cert. denied, 325 U.S. 877, 65 S.Ct. 1553, 89 L.Ed. 1994; Commonwealth ex rel. Fox v. Maroney, 417 Pa. 308, 207 A.2d 810 (1965).

The United States Supreme Court in Sanders v. United States, infra, examining the federal statute which provides for post-conviction collateral review (28 U.S.C. § 2255) quoted Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924):

"The Petitioner had full opportunity to offer proof of * * * [the second ground] at the hearing on the first petition; and, if he was intending to rely on that ground, good faith required that he produce the proof then. To reserve the proof for use in attempting to support a later petition, if the first failed, was to make an abusive use of the writ of habeas corpus. * * *"

The Court in *Sanders* went on to say:

"Similarly, the prisoner who on a prior motion under sec. 2255 has deliberately withheld a ground for relief need not be heard if he asserts that ground in a successive motion; his action is inequitable—an abuse of the remedy—and the court may in its discretion deny him a hearing." Sanders v. United States, 375 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

The Single Justice applied these principles to the situation presented by Petitioner's present petition and found that all matters not already adjudicated could and should have been presented in the 1965 petition and were therefore barred under the statutory provisions of waiver. To be effective a waiver of a constitutionally guaranteed right must be an intentional relinquishment or abandonment of the right. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938). It will be noted that this case presents a somewhat unusual situation in that at hearing on the 1965 petition, the Petitioner, while abandoning the several other claims in his original petition, insisted that he was *not* waiving his right to present them later.

That petition was brought in November 1965 pursuant to 14 M.R.S.A. § 5502 and it assailed the same conviction which is now under attack. Petitioner and his attorney

appeared on March 30, 1966 before the Justice and at the outset of the hearing, Petitioner's counsel told the Court:

"The sentence that we are attacking, if Your Honor please, is a conviction at the September Term, 1960, Cumberland County Court, which was subsequently upheld by the Law Court, which was a conviction of larceny, followed by a trial as a habitual criminal at which time this Petitioner was sentenced to a term of years which was subsequently commuted by the Governor and Council."

Later, but before evidence was presented, Petitioner's counsel requested permission to withdraw without prejudice the original petition with its several allegations of error attacking the validity of the conviction itself and moved to proceed on what he termed a "Supplemental(?) Petition for the Writ of Habeas Corpus" which concerned itself exclusively with the procedure followed in the revocation of Petitioner's parole.

The Single Justice pointed out to Petitioner and his counsel that this was a petition for the statutory post-conviction habeas corpus, that the statute required Petitioner to include in the petition every claim of error of which he was aware and that his intended course of action might constitute a waiver of unpresented claims. The Petitioner and his counsel expressed the opinion that the petition was one for the common law writ of habeas corpus and not a petition for the statutory post-conviction writ. There followed:

"THE COURT: I think his counsel probably ought to discuss with him the statutory requirement that everything you had must be included and in a later proceeding you would have to show some cause why it wasn't and could not be included at this time. This is a fairly important decision he is making. It might foreclose. * * *

"[PETITIONER'S ATTORNEY]: For the benefit of Mr. Mottram, that even though he did not intend to be here on post conviction, it is my understanding the Court has ruled this is a post conviction hearing.

"THE COURT: Yes.

\* \* \* \* \* \*

"THE COURT: I think I will have to ask you to deal with this at this moment in making a decision as to what you want to do on the basis that I will undoubtedly view it as post conviction and your only remedy at that point might be an appeal on this point from my decision. I think in all fairness, I should indicate to you this is as I view it. I think that is the result we are led to by the statute, myself.

"[PETITIONER'S ATTORNEY]: I understand your position and I shall discuss it. (Conference between [Petitioner's Attorney] and Mr. Mottram.) (Off-record discussion)

RECESS

"[PETITIONER'S ATTORNEY]: For the record, it is our position here that we do not attack the judgment and conviction of 1960. We are now attacking his personal freedom as a parole violator so that whatever rights we may reserve in appeal as to whether or not his is a post conviction hearing, we would now like to avail ourselves of that reservation. We have elected to go ahead on that issue."

On appeal this Court agreed with the Single Justice's ruling that post-conviction habeas corpus is the proper remedy to test the legality of imprisonment following parole revocation. Mottram v. State, Me., 232 A.2d 809, supra.

It was Petitioner's and his attorney's contention that Petitioner had abandoned for the time Petitioner's petition for the statutory writ and was now seeking the common law writ to attack only one phase of Petitioner's alleged unlawful imprisonment. The post-conviction habeas corpus statute had been in effect some 2½ years

at the time of the hearing on the 1965 petition. Although this Court had not had occasion to deal under it with alleged invalid revocation of paroles, several petitions under the statute had reached the Court and in Longway v. State, 161 Me. 430, 213 A.2d 519 (1965) we had stressed that the purpose of the statute is to inquire into the legality of the detention of "any person convicted of a crime and *incarcerated thereunder * * * who claims that he is illegally imprisoned * * *"*. The Justice had ruled that the petition was subject to the terms of the statute and had warned Petitioner that he might be waiving his other claims if he chose to proceed on one alone.

■ Thus we have the anomalous situation of a Petitioner deliberately, after warning that his act may constitute a waiver, doing an act which the statute defines as a waiver, but at the same time insisting that he did not intend it to be a waiver. We conclude, as did the Justice whose decision is now on appeal, that all matters now sought to be raised could and should reasonably have been raised in the 1965 petition and were waived. Petitioner does not in his present petition advance any claim that they could not reasonably have been raised in the 1965 petition. His counsel, in his thorough and resourceful argument, contends that Petitioner's claim of deprivation of his right against self-incrimination could not have been raised in the petition which he signed in November, 1965 as this Court did not until the filing of its opinion in Michaud v. State, 161 Me. 517, 215 A.2d 87 on December 13, 1965 make clear that that privilege applied to incriminating admissions as distinguished from confessions. While it might well be contended that the statement of the Court in *Michaud* was no departure from existing law, the record shows that the opinion in *Michaud* had in fact been announced more than three months before the March 30, 1966 hearing at which Petitioner chose not to prosecute that particular claim.

While we concur in the conclusions of the Single Justice, our examination of Petitioner's claims discloses additional bars to relief on each of his alleged errors.

■ 14 M.R.S.A. § 5504 limits the Court's consideration to assertions by the Petitioner "specifically alleging valid facts that set forth grounds upon which the petition is based". Petitioner's first allegation of error fails to satisfy this statutory requirement. His claim that the State "knowingly used perjured testimony against Petitioner" in that a State Police Detective falsely testified "as to certain statements made by the Petitioner" is not a specific allegation of valid facts and does not present a valid issue for our consideration.

■ Petitioner's second claim of error alleges that during his 1960 trial the Court excluded his offer in evidence of tape recordings of conversation between Petitioner and the officers which he contended would demonstrate the officer's perjury. The recordings contained irrelevant prejudicial matter which could not on the recorder which had been made available by the State be separated from the relevant material. Petitioner contends that if played on a different type machine equipped for instantaneous stops and play backs the relevant portions could have been separated and offered to the jury.

Petitioner made the same allegation in his 1962 Petition for writ of error coram nobis and the issue was tried before a Justice in the Superior Court. Although that Justice dismissed the writ on the ground that it presented no allegations of error which were not known to Petitioner at time of trial, this Court, on appeal, fully reviewed and rejected Petitioner's claim as to this particular issue. The Court said (Mottram, Ptr. v. State, 160 Me. 145 at 149, 200 A.2d 210 at 212, supra):

"Petitioner's counsel of the second trial acknowledges that the State had of-

fered to him full resort to the recordings and spent some hours listening to much of them. He asserts, however, that the audibility was only 10%. No complaint was raised by the Petitioner or by his counsel concerning lack of time or of opportunity to hear the records. All pertinent cross examination of State witnesses was the respected right of the Petitioner during his second trial. Petitioner had been present and collaborated in the making of more than half of the sound recordings. Neither he nor his trial counsel requested leave of Court or co-operation of State counsel to correct any inaudibility in sound reproduction."

The record demonstrates no reason why the holding of the Court in 1964 should not have the force of res judicata. Petitioner and his attorney were afforded by the State complete access to the tapes and by the Court the opportunity to present relevant portions to the jury if they could be separated from the irrelevant parts. Petitioner's then counsel testified at a previous hearing:

"* * * I did ask Mr. Chapman, (State's attorney at the second trial) and I believe the Court also, that I wanted some time with you (Mottram) to listen to the records with me, and they told me that they would be very glad to co-operate. * * *"

Several possible methods of separating the good from the bad suggest themselves—the use of a machine designed to stop and play back desired portions, the preparation of a new tape containing only the relevant portions, the submission of a transcript containing the relevant portions, stipulation, etc. There is no allegation that Petitioner and his counsel were denied the opportunity to attempt any such method of using the recordings. No such attempt was made and instead, Petitioner and his counsel excepted to the Presiding Justice's ruling. It was a matter of trial tactics. In overruling Petitioner's exceptions the Court in State v. Mottram, 158 Me. 325 at 338, 184 A.2d 225 at 232, supra, had said:

"There was no flat refusal to admit recordings in violation of the accepted principles. The respondent could have taken further action to separate the good from the bad, the admissible from the inadmissible in the recordings. He did nothing but chose, in spite of his knowledge of their contents, to leave the recordings 'in the condition which they are in.' He sought to introduce the recordings *in toto* with no attempt whatsoever to select the good and abandon the bad. The ruling was correct and the exception is overruled."

■ Petitioner's third claim of error alleges that police officers subjected Petitioner to illegal arrest, illegal transportation, threats, coercion and the deprivation of right to counsel as a result of which they obtained from him "certain information" by means of which the State was able "to attack the credibility of Petitioner" at trial. The petition does not allege that the claimed deprivations of rights were not known to him at time of trial and could not reasonably have been raised there. It is clear from the record that they could and should have been raised at trial and no reason for their not having been raised at trial is alleged. In addition the allegation of extraction from him of "certain information" is fatally vague and clearly fails to satisfy the statutory requirement that the petition specifically allege valid facts.

■ Although Petitioner's counsel has at argument waived for him his fourth claim of error we have examined it and we find it to be without merit. At Petitioner's first trial an amendment to the indictment was allowed by consent of the Petitioner. Petitioner later attacked the allowance of the amendment and this Court upheld the allowance as being one of form and not substance. State v. Mottram, 155 Me. 394, 156 A.2d 383, supra. Petitioner here at first contended that at his second trial on the same indictment the State should have been required to offer the amendment

anew. This position is unsupportable. The pending indictment was the original indictment as amended.

■ Petitioner's fifth claim is impermissibly vague and the allegation that the State's attorney at trial cross examined Petitioner "concerning certain alleged crimes for which the Petitioner had not been convicted" is not a specific allegation of valid facts which would entitle Petitioner to relief. In addition, it alleges a claimed trial error which could and should have been raised on appeal.

■ Petitioner's sixth claim alleges that the jury which found his prior conviction included four jurors who had previously that day sat as members of the jury which had found him guilty. (It will be recalled that Petitioner had been convicted on separate counts which charged larceny and a prior conviction and sentence to a state prison. The two counts were tried separately.) There was no constitutional sanction against the determination of both issues by an *entirely* same jury. (Ingerson v. State, 146 Me. 412, 82 A.2d 407 (1951) ) and the statutory requirement of separate trials of the two issues came later. P.L.1961 Chap. 268, sec. 2. If Petitioner made any timely objections at trial to this aspect of the procedure being followed (and the record does not show that he did so) he failed to present them on appeal to the Court in 1962 and they are waived. The writ of habeas corpus does not lie to correct alleged trial irregularities which could have been raised on appeal. Bennett v. State, 161 Me. 489, 214 A.2d 667 (1965); Papolas v. State, Me., 235 A.2d 533 (1967).

Petitioner's seventh allegation of error claims that during the Presiding Justice's charge to the jury at the trial of the second count the Justice responded to a juror's question and "the Justice's answer and his entire charge to the jury eliminated all findings of fact and evidence from the jury's minds and amounted to a directed verdict."

■ This generalized allegation as to the Justice's charge is too vague to present a valid issue here. Moreover, it attempts to raise an alleged trial irregularity to which exceptions could have been taken and prosecuted and were not. Furthermore, the identical claim as to the Justice's charge was considered by this Court on Petitioner's appeal from the denial of his motion for a new trial and this Court held that although no exceptions had been taken to preserve the claim of error, the Court, in studying the record found no manifest error and concluded that the jury was fully justified in finding that Petitioner was an habitual offender under the statute. State v. Mottram, 158 Me. 325, 343, 184 A.2d 225, supra.

Petitioner's final claim of error concerns the fact that the Grand Jury's indictment included a count brought under R.S.1954, Chap. 149, § 3 (which is now 15 M.R.S.A. § 1742). Although frequently called the Habitual Criminal Act it is more properly designated as the Recidivist Statute. When applied to this case, this legislation authorizes a sentence in excess of that provided for grand larceny upon proof that the Defendant has previously been convicted of a felony and has been sentenced to a state prison.

■ Petitioner claims that a police officer motivated by personal animosity toward Petitioner "obtained" this second count in some undescribed manner. An indictment by the Grand Jury represents the findings of the jurors upon evidence presented to them under oath and not the wishes of an officer whose animosity, if it exists, does not in itself invalidate an indictment. This allegation is fatally vague, does not state a claim which would entitle Petitioner to relief and the petition does not allege that the claim could not have been presented in one of Petitioner's appeals.

■ Petitioner's complaint that he "was informed" by some unnamed informer before trial on the second count that the

Presiding Justice threatened him with a longer sentence if he pleaded not guilty on that count does not meet the requirements of section 5504 as to specific allegation of valid facts. It is also on its face a claim which could have been and was not raised on appeal.

Petitioner's contention that the so-called common thief statute (then R.S.1954 Chap. 132, § 10) was specifically applicable to his case bears strong resemblance, at least, to his contention before this Court on appeal in 1962 when he argued that the common thief statute and the habitual criminal statute were equally applicable to the charge against him, to his confusion. This Court at that time found that the second count clearly brought the charge within the recidivist statute. State v. Mottram, 158 Me. 325, 338, 184 A.2d 225, supra.

The Petitioner's assertion that the common thief statute was applicable to his case (thus excluding, he says, use by the State of the recidivist statute) falls short of being the specific allegation of valid facts which would present a valid issue here. We note also that the record before us does not disclose facts from which such an applicability could be found.

Finally, Petitioner assails the constitutionality of the recidivist statute as a denial of due process and equal protection of the law, void for vagueness and amounting to cruel and unusual punishment. We have studied his counsel's exhaustive and resourceful argument.

Our Court has been called upon several times to examine this statute since it originated as Section 18 of Chapter 282 of the Public Laws of 1824. Jenness v. State, 144 Me. 40, 64 A.2d 184 (1949); Ingerson v. State, 146 Me. 412, 82 A.2d 407 (1955); State v. Small, 156 Me. 10, 157 A.2d 874 (1960); Austin v. State, 158 Me. 292, 183 A.2d 515 (1962); Stubbs v. State, Me., 243 A.2d 57. In *Jenness*, this Court rejected the Defendant's claim that our recidivist statute denies equal protection of the laws, concluding that

"Statutes that permit extra punishment for old or habitual offenders are constitutional, for the reason that all persons on conviction who have been previously convicted and sentenced to any State Prison, are subject to the same treatment."

Our position as to this is unchanged.

We find no constitutionally objectionable vagueness in the language of the statute, the single effect of which is, as we said in *Austin*, that conviction under it increases the maximum permissible limit of punishment for any felony to any term of years. In State v. Munsey, 152 Me. 198, 127 A.2d 79 (1956), we reexamined the principles of due process of law in relation to criminal statutes and reiterated that that phrase is another name for governmental fair play. Both the state (Art. 1, sec. 9) and federal (Eighth Amendment) constitutions forbid the inflicting of cruel and unusual punishments. In Duncan v. Ulmer, 159 Me. 266, 284, 191 A.2d 617, 626 (1963) we said:

"The category of discipline 'implies something inhumane and barbarous, or, some punishment unknown at common law' ".

We find none of these several, prohibited qualities present in a statute which permits—but does not require—greatly enhanced punishment for recidivists in appropriate cases.

Appeal denied.

WEBBER, J., did not sit.