**Louis NADEAU**

v.

**STATE of Maine et al.**

Supreme Judicial Court of Maine.

July 26, 1967.

Nathanson, Allen & Goldfarb, by Matthew S. Goldfarb, Portland, for appellant.

John W. Benoit, Asst. Atty. Gen., Augusta, for appellees.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY and DUFRESNE, JJ.

WEBBER, Justice.

This was a petition for post-conviction relief brought pursuant to the provisions of 14 M.R.S.A., Secs. 5502–5508. Sec. 5507 includes the following pertinent provision: "A petitioner who has previously entered a petition under the Revised Statutes of 1954, chapter 126–A or under chapter 129, sections 11 and 12 shall not be granted the writ under this remedy unless the court on considering the petition finds grounds for relief asserted therein which *could not reasonably have been raised in said previous petition.*" (Emphasis supplied). Deeming this statutory bar applicable, the justice below denied the writ.

The petitioner was tried by a jury and convicted of murder in January, 1950. He was first arrested in October, 1949 and was presented on October 18, 1949 in the Biddeford Municipal Court for a "probable cause" hearing. This being a felony, the jurisdiction of the Municipal Court was limited to examination and a determination as to whether or not the respondent should be held to await grand jury action. R.S.1944, Ch. 134, Secs. 12, 13 and 14. There was no express statutory provision calling for arraignment at this state on a felony charge but it had been the practice to take a plea, presumably on the theory that a plea of guilty, if tendered, would support a finding of "probable cause". Frequently, however, a magistrate would not accept a plea of guilty to murder.

In the Municipal Court and prior to arraignment the magistrate inquired whether or not the respondent had counsel and whether or not he wanted counsel. To each

question respondent returned a negative answer. The respondent made no claim of indigency and no request for court-appointed counsel. The magistrate impressed upon him the fact that "this was a serious charge." He did not advise the respondent of his right to counsel, and in fact such was not the practice at "probable cause" hearings in 1949. The complaint charging the respondent with murder was then read to him and he pleaded guilty. At subsequent trial he was represented by court-appointed counsel of his own choice. Evidence of his admission by plea of guilty at the "probable cause" hearing was offered by the State during the trial *and admitted without objection.*

On December 21, 1960 the petitioner addressed a petition for the common law writ of error *coram nobis* to the Superior Court. This petition, among other grounds therein alleged, attacked a written confession admitted in evidence at trial as having been involuntary and improperly induced. This petition was denied March 3, 1961.

On March 19, 1962 the petitioner initiated a petition for the writ of error *coram nobis* alleging (a) lack of due process at trial, (b) induced confession thought by him, because of his illiteracy, to be a confession of forgery, (c) physical duress by the authorities, (d) physical fear preventing him from testifying in his own defense and (e) physical fear preventing him from acquainting his trial attorney with all facts known to him. R.S.1954, Ch. 126–A, then in effect, provided in pertinent part:

"Sec. 1. Availability of coram nobis; conditions. Any person convicted of a crime and incarcerated thereunder, or released on probation, or paroled from a sentence thereof, who claims that his sentence was imposed in violation of the Constitution of the United States or the Constitution of this State, or that there were errors of fact not of record which were not known to the accused or the court and which by the use of reasonable diligence could not have been known to the accused at the time of trial and which, if known, would have prevented conviction, may institute a coram nobis proceeding to set aside the plea, conviction and sentence, provided the alleged error has not been previously or finally adjudicated or waived in the proceedings resulting in the conviction or in any other proceeding that the petitioner has taken to secure relief from his conviction."

It is apparent that the allegations of constitutional deprivation now asserted by the petitioner fell within the scope of the statutory remedy above quoted. A full hearing was held on the 1962 writ and the same was dismissed on October 18, 1962. Appeal was taken to the Law Court and by us denied as shown by our opinion in Nadeau v. State of Maine, (1963) 159 Me. 260, 191 A.2d 261.

On July 6, 1963 the petitioner filed his petition for the writ of habeas corpus with the United States District Court for the District of Maine. This petition was denied on or about July 8, 1963.

Our post-conviction relief statute is broad in scope and affords one simple method of review of errors of record, errors of fact not of record, unlawful sentence, deprivation of constitutionally guaranteed rights and the like. In order to prevent harassment of the courts and a piecemeal presentation of asserted grounds of relief, the statute imposes the very reasonable requirement that if multiple petitions are presented, some reason or reasonable excuse be offered for failure to assert present grounds in an earlier petition. We are disposed to construe the statute liberally for the benefit of persons under restraint and in practice we have, as individual Justices, dealt with successive petitions without overly close scrutiny of the reasons offered for failure to assert all claims in earlier petitions.

■ The Petitioner now and for the first time claims a constitutional deprivation in that he was not afforded counsel at

the "probable cause" hearing which he now contends was a "critical stage" of the proceedings against him. Although he does not allege any reason for failure to raise this claim in his prior petitions for post-conviction review, we are satisfied that the reason is manifest and self-evident as a matter of law. The reason is to be found in the interpretation of the Sixth and Fourteenth Amendments set forth in the decision of the Supreme Court of the United States in White v. State of Maryland (1963) 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193. In White the respondent was arraigned at a "probable cause" hearing. He had no counsel and under Maryland law the magistrate was without power to appoint one. Respondent pleaded guilty and at his trial that plea was put in evidence as an admission. No objection was offered to the evidence at trial. The Maryland court had held in White v. State (1962) 227 Md. 615, 177 A.2d 877 that the point was not open to the respondent on appeal, no objection having been taken at trial. The United States Supreme Court granted certiorari and reversed, holding that "in this case" the preliminary hearing was a "critical stage" at which respondent was deprived of the assistance of counsel. The Supreme Court declined to distinguish Hamilton v. State of Alabama (1961) 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 in which respondent was deprived of the assistance of counsel at his arraignment, a stage at which under Alabama law certain defenses, pleas and motions must be tendered or the opportunity therefor is lost. Until the decision in White v. State of Maryland was announced, the petitioner could have had no reason to believe that the ground here alleged would be deemed tenable in view of his failure to object to the evidence at trial. Bennett v. State of Maine (1965) 161 Me. 489, 214 A.2d 667. We are satisfied that our post-conviction relief statute should be liberally construed to accomplish its manifest purpose and therefore hold that we will not dismiss a petition for such relief when no reason is assigned or shown for not raising in prior adjudicated petitions the grounds presently relied upon where, as here, it is apparent that there has occurred a change in the law which, if applicable retroactively, would affect the rights of the petitioner.

In Holbrook v. State of Maine (1965) 161 Me. 102, 105, 208 A.2d 313 we held in effect that a "probable cause" hearing in this State is not and never has been a "critical stage" of the proceedings under ordinary circumstances. We said, however: "We recognize * * * that events occurring at or in connection with the preliminary hearing stage may become significant but only insofar as such events have an 'appreciable effect' upon subsequent proceedings at the higher court level. The averments here are not of such a nature as to raise an issue as to such a subsequent 'appreciable effect'. *There was, for example, no plea of guilty at the District Court level which might in some manner have been used adversely to the petitioner in the Superior Court.*" (Emphasis supplied). We now have before us the case Holbrook anticipated.

▮ Our decision necessarily turns on whether or not White v. State of Maryland is to be given retrospective application. The Supreme Court of the United States has as yet had no occasion to decide the point. We recognize that Gideon v. Wainwright (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 and Hamilton v. State of Alabama, supra have both been given retroactive effect, but in our view it does not follow that White v. State of Maryland should take the same course. There are distinct differences which are most important in any resolution of the issue of retroactivity. The need for and right to the assistance of counsel at the very trial at which guilt or innocence is to be determined (Gideon) is fundamental and self-evident. So also at the point of arraignment at the trial court level where issues are framed for trial, where certain defenses must be raised or forever lost, where any attack upon the composition of the grand jury must be

**86**

launched or abandoned, the need for counsel is clear (Hamilton). Each of these situations, trial and arraignment, is *always* a "critical stage" of the proceedings. Contrast, however, the events of a "probable cause" hearing as practiced in this and many other states. There is no determination of guilt or innocence. There is no requirement of arraignment or the taking of a plea but if one is taken, as was the common practice in felony cases in 1949, it has no binding effect as a "plea" since the respondent is called upon to plead anew at the trial court level. No rights need be claimed or defenses reserved at the preliminary hearing. In short, the only function of the examination is to determine whether or not the respondent should be detained or required to furnish bail pending grand jury investigation of the charges lodged against him. Under ordinary circumstances, then, the preliminary hearing is not a "critical stage" and the assistance of counsel is not an absolute requirement. Holbrook v. State of Maine, supra; Commonwealth v. O'-Leary (1964) 347 Mass. 387, 198 N.E.2d 403; State v. Moses (1966) 101 Ariz. 426, 420 P.2d 560. The rule first announced in White makes the preliminary examination a "critical stage" but only upon and because of the occurrence of a subsequent event at trial stage. In White as in the instant case the adverse effect upon the respondent came only when an admission obtained when he did not have the benefit of the advice of counsel was used against him at his trial. If this had not occurred, the lack of assistance of counsel at the preliminary examination would have had no effect whatever, "no right of the slightest value (having) been lost." Commonwealth v. O'Leary, supra.

■ On the issue of retroactivity, therefore, we see no difference between the rule of *White* and the Rule of Escobedo v. State of Illinois (1964) 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977. In each case the mischief which the rule seeks to remedy is the use of admissions and confessions at trial which were obtained at a "critical stage" when respondent was deprived of the assistance of counsel. White does not hold or imply that counsel must be afforded at *all* "probable cause" hearings, however desirable that result might be—it is rather aimed at preventing the State from reaping any subsequent advantage from the fact that respondent was deprived of such assistance.

We have carefully examined the guidelines for determining retroactivity as set forth in a number of cases decided by the United States Supreme Court and we conclude that White should not be given retrospective application in the instant case. The most recent analysis of the principles governing retroactivity which has come to our attention is found in Stovall v. Denno (Opinion June 12, 1967) 387 U.S. ——, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Therein the stated criteria are "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." The standards thus summarized in Stovall had been employed by the Court in Linkletter v. Walker (1965) 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, Tehan v. Shott (1966) 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed. 2d 453 and Johnson v. State of New Jersey (1966) 384 U.S. 719, 729, 731, 86 S.Ct. 1772, 1779, 1780, 16 L.Ed.2d 882. The language employed by the Court in Johnson applies with equal force in the instant case. The Court said in part: "We are thus concerned with a question of probabilities and must take account, among other factors, of the extent to which other safeguards are available to protect the integrity of the truth-determining process at trial." It should be noted that even in 1950 this "process" was protected by the presence of counsel at petitioner's official arraignment and trial, a "safeguard" conspicuously lacking in Gideon and Hamilton. In these cases the lack of assistance of counsel produced adverse effects which were incurable and irremediable. Not so in the instant case where ap-

propriate trial strategy could neutralize any evidentiary disadvantage stemming from the preliminary examination and thus preserve the integrity of the "truth-determining process." Now and for the first time the petitioner asserts that he did not knowingly and understandingly admit his guilt by plea. That assertion, properly supported, could most appropriately and effectively have been used to ground a timely objection to evidence of his admission and thus petitioner could have insulated himself from the effect of events at the preliminary examination.

We quote further from Johnson with particular reference to the impact of retrospective application on the administration of justice. "At the same time, retroactive application of Escobedo and Miranda would seriously disrupt the administration of our criminal laws. It would require the retrial or release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards. Prior to Escobedo and Miranda, few States were under any enforced compulsion on account of local law to grant requests for the assistance of counsel or to advise accused persons of their privilege against self-incrimination." Prior to White there was no intimation that the assistance of counsel would be required at a preliminary examination at which the sole issue would be the question of custody of the accused pending grand jury investigation.

We have no means by which to assess the number of cases in which convictions otherwise properly obtained would have to be set aside as the result of a retrospective application of White. We have reason to assume that the number in this and other jurisdictions would be substantial. Effective retrial would always be difficult and frequently impossible because of the loss of witnesses and the dimming of memories. We conclude as did the Court in Stovall v. Denno,

supra, when it said: "It is, therefore, very clear that retroactive application of Wade [United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 149] and [Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178] Gilbert 'would seriously disrupt the administration of our criminal laws.' Johnson v. State of New Jersey, supra, at 731, 86 S.Ct. at 1780. In Tehan v. Shott, supra, we thought it persuasive against retroactive application of the no-comment rule of Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, that such application would have a serious impact on the six States that allowed comment on an accused's failure to take the stand. We said, 'To require all of those States now to void the conviction of every person who did not testify at his trial would have an impact on the administration of their criminal law so devastating as to need no elaboration.' 382 U.S. at 419, 86 S.Ct. at 467. That impact is insignificant compared to the impact to be expected from retroactivity of the Wade and Gilbert rules." As to the future, the mischief which the White rule was designed to remedy has been effectively remedied by the mere announcement of that rule. No more is required. A retrospective projection of the rule backward in time would have drastic and far reaching consequences and is by no means required to assure acceptance and implementation of the rule.

■ If, as we conclude, White is not to be given retroactive effect, the petitioner here asserts no ground of relief not asserted in prior petitions, and his present petition, thus viewed, is without merit.

The entry will be

Appealed denied.

MARDEN and WEATHERBEE, JJ., did not sit.