**Robert H. MOTTRAM, Petitioner,**

v.

**Frank F. MURCH, as he is Sheriff of Piscataquis County in the State of Maine et al., Respondents.**

**Civ. No. 11–138.**

United States District Court, D. Maine, S. D.

Aug. 5, 1971.

S. Mason Pratt, Jr., Portland, Me., for petitioner.

Garth K. Chandler, Asst. Atty. Gen., Augusta, Me., for respondents.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 *et seq.* The petitioner, Robert H. Mottram, was originally convicted, following jury trial, at the January 1958 term of the Cumberland County, Maine Superior Court on both counts of an indictment charging him, in the first count, with larceny of an automobile, Me.Rev.Stat. ch. 132, § 1 (1954), as amended, 17 M.R. S.A. § 2101, and in the second count, with

previously having been convicted of a felony and sentenced to the Maine State Prison, Me.Rev.Stat. ch. 149, § 3 (1954), as amended, 15 M.R.S.A. § 1742 (Maine's habitual offender statute). On appeal, the Supreme Judicial Court of Maine affirmed his conviction. State v. Mottram, 155 Me. 394, 156 A.2d 383 (1959). Subsequently, however, in September 1960, on a writ of error *coram nobis*, a Superior Court justice vacated the judgment of conviction and ordered a new trial because the prosecution had allowed to go uncorrected certain testimony of a State witness which it ought to have known was false and because the State had misled the defense into believing that certain disc recordings which would have demonstrated the falsity of the testimony were inaudible. At the October 1960 term of the Cumberland County Superior Court, petitioner was retried and again found guilty on both counts. He was sentenced to the Maine State Prison for a term of 10 to 30 years, but in June 1963 his sentence was commuted to a term of four years and two months to 20 years. On appeal, the Supreme Judicial Court affirmed his second conviction. State v. Mottram, 158 Me. 325, 184 A.2d 225 (1962).

The present petition is the culmination of petitioner's persistent efforts over a 10-year period to obtain a review of his 1960 conviction by state and federal courts. Relevant to the instant case are the following prior proceedings [1]:

(1) In November 1962 he filed a petition for writ of error *coram nobis* in the Cumberland County Superior Court, which included many of the same allegations contained in the present petition. On May 20, 1963 the single justice dismissed this petition, without hearing, on the ground that *coram nobis* was not the proper remedy. On May 8, 1964 the Supreme Judicial Court affirmed. Mottram v.

---

[1] While the appeal from his 1960 conviction was pending, in February 1961 petitioner applied for a stay of execution of his sentence and bail, which was denied on March 28, 1961. In February 1962 he also sought a writ of habeas corpus on the ground that his sentence was in excess of the statutory maximum. The writ was denied on April 12, 1962.

State, 160 Me. 145, 200 A.2d 210 (1964).

(2) In November 1965, having been previously released on parole but returned to prison as a parole violator, petitioner filed with the Cumberland County Superior Court a petition for post-conviction habeas corpus relief under the provisions of 14 M.R.S.A. § 5502 *et seq.* challenging the procedures followed by the Parole Board in revoking his parole. Counsel was appointed to represent him. At the hearing on this petition, petitioner made clear that he was not attacking the conviction itself, even though the presiding justice specifically warned him and his attorney that his failure to do so might constitute a waiver of his right to attack his conviction in subsequent post-conviction proceedings. The writ was denied, after hearing, on April 21, 1966, and on August 21, 1967, the Supreme Judicial Court affirmed. Mottram v. State, 232 A.2d 809 (Me.1967).

(3) After the hearing on his 1965 petition, but before the decision was announced, petitioner filed on April 13, 1966 a habeas corpus petition in this Court alleging many of the grounds presented in his present petition. This petition was denied, without hearing, for failure to exhaust state remedies. Mottram v. Robbins, Civil No. 9–42 (D. Me., June 14, 1966) (unreported). A certificate of probable cause for appeal from this decision was denied by the Court of Appeals, Mottram v. Robbins, Misc. No. 181 (1st Cir., Aug. 11, 1966), and the Supreme Court denied certiorari. Mottram v. Robbins, 388 U.S. 922, 87 S.Ct. 2122, 18 L.Ed.2d 1370 (1967).

(4) In June 1967 petitioner filed with the Cumberland County Superior Court a second petition for post-conviction habeas corpus relief under 14 M.R.S.A. § 5502 *et seq.*, this time directly attacking his 1960 conviction. Counsel was appointed to represent him and an amended petition was filed in March 1969 alleging grounds substantially identical to those raised in the petition presently before this Court. On April 15, 1969 the single justice dismissed the petition, without an evidentiary hearing, on the grounds that (a) some of petitioner's allegations alleged mere trial errors not open to collateral review or were devoid of merit upon their face; (b) some alleged matters which had finally been adjudicated in prior proceedings; and (c) all others alleged matters which had been effectively waived by petitioner's failure to present them in support of his 1965 petition. On March 19, 1970 the Supreme Judicial Court affirmed. Mottram v. State, 263 A.2d 715 (Me.1970).

Petitioner, having been once again released on parole, but presently incarcerated in the Piscataquis County jail because of charges unrelated to his 1960 conviction, filed the present petition in this Court on June 11, 1970. By order dated June 26, 1970, he was granted leave to proceed in forma pauperis and counsel was appointed to represent him throughout these proceedings. On October 5, 1970 an amended petition was filed alleging grounds substantially identical to those raised in his most recent petition for post-conviction relief in the Maine courts. In his amended petition, petitioner asserts that his 1960 conviction was obtained in violation of his Fourteenth Amendment rights to Due Process and Equal Protection of the Law by reason of the following:

A. The State's knowing use of perjured testimony at his trial.

B. Illegal arrest and transportation, deprivation of right to counsel, and violation of privilege against self-incrimination.

C. Denial of fair and impartial jury and violation of privilege against self-incrimination.

D. Denial of trial by jury.

E. Bias of the trial judge.

F. Unconstitutionality of the habitual offender statute.

G. Denial of fair and impartial trial.

H. Denial of Equal Protection by selective enforcement of the habitual offender statute.

The State concedes that because petitioner remains subject to the restraints of his parole from the sentence imposed upon his 1960 conviction, this Court has jurisdiction to entertain his habeas corpus petition under 28 U.S.C. § 2254(a). Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *see* Nelson v. George, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970); Peyton v. Rowe, 391 U.S. 54, 67, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); Desmond v. United States Board of Parole, 397 F.2d 386, 389 (1st Cir.), cert. denied, 393 U.S. 919, 89 S.Ct. 249, 21 L.Ed.2d 206 (1968). The State also concedes that petitioner has exhausted his available state remedies as required by 28 U.S.C. § 2254(b). The State strenuously contends, however, that petitioner has waived the grounds asserted by him in support of his present petition because of his failure to raise them in his 1965 state habeas corpus proceeding, and that, in any event, his allegations are without merit.

After hearing counsel, the Court on December 23, 1970 ordered an evidentiary hearing on the waiver issue in order that petitioner might be provided the opportunity to show that his failure to assert his present contentions in the 1965 proceeding was not a voluntary and intentional relinquishment of a known right or a deliberate bypassing of orderly state procedures under the principles set forth by the Supreme Court in Fay v. Noia, 372 U.S. 391, 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and Johnson v. Zerbst, 304 U.S. 458, 464–465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The Court also, observing that petitioner had never received a determination of the merits of his claims by any state or federal court, ordered a full evidentiary hearing on the factual issues presented by his allegations. *See* Townsend v. Sain, 372 U.S. 293, 312–318, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963); *cf.* 28 U.S.C. § 2254(d). Such an evidentiary hearing was held on March 17, 18, 29 and 31, 1971. At the hearing there was received in evidence, by agreement, all relevant state court records, including the complete transcripts of petitioner's 1958 and 1960 trials, the complete record of his most recent state habeas corpus proceeding, selected portions of the records of his prior state post-conviction proceedings, and a transcript of the audible portions of a disc recording of his interrogation by Maine State Police officers on January 28, 1958. Additionally, petitioner presented the testimony of the county attorney who had presented the state's case at petitioner's 1960 trial, his own testimony, and the testimony of four Maine State Police officers who had conducted the investigation in December 1957 and January 1958 which led to petitioner's subsequent prosecution. Respondents presented no testimony other than that elicited on cross-examination of the witnesses called by petitioner.

After a careful consideration of the entire record and the written and oral arguments of counsel, the Court finds that petitioner has wholly failed to establish that he is in custody in violation of the Constitution or laws or treaties of the United States, 28 U.S.C. § 2254(a), and that petitioner is therefore not entitled to the issuance of the writ, for the following reasons:

*I*

*The Waiver Issue*

■ For a proper understanding of the waiver issue presented by this case, it is necessary to review briefly the provisions of the Maine post-conviction habeas corpus statute, 14 M.R.S.A. § 5502 *et seq.*, and the record of petitioner's 1965 state habeas corpus proceeding. Section 5502 of the Maine statute provides a single comprehensive method for all collateral attacks on judgments of conviction. Mottram v. State, 263 A.2d 715, 719 (Me. 1970); Green v. State, 245 A.2d 147, 150 (Me.1968); Nadeau v. State, 232 A.2d 82, 84 (Me.1967). Both Section 5502 and 5507, however, bar repetitious petitions

asserting matters which could reasonably have been raised in a prior petition.[2]

■ The habeas corpus petition filed by petitioner in November 1965 was brought under 14 M.R.S.A. § 5502 and assailed the same conviction now under attack. At the hearing before the single justice on March 30, 1966, however, at which petitioner and his attorney were present, petitioner's counsel requested permission to withdraw without prejudice the original petition filed by petitioner and to proceed on what he termed a "supplemental" petition, attacking solely the procedures followed by the Parole Board in revoking petitioner's parole. Although the post-conviction statute itself provided adequate warning of the risk of waiver, the presiding justice pointed out to petitioner and his counsel that the petition was one for statutory post-conviction habeas corpus; that the statute required petitioner to include in the petition every claim of error of which he was aware; and that petitioner's failure to do so might constitute a waiver of any claims not presented. Petitioner and his counsel stated that in their view the petition was one for the common-law writ of habeas corpus, see 14 M.R.S.A. § 5501, and not a petition for the statutory writ. The following colloquy then ensued:

> THE COURT: I think his counsel probably ought to discuss with him the statutory requirement that everything you had must be included and in a later proceeding you would have to show some cause why it wasn't and could not be included at this time. This is a fairly important decision he is making. It might foreclose—
>
> MR. TEVANIAN: For the benefit of Mr. Mottram, that even though he did

not intend to be here on post conviction, it is my understanding the Court has ruled this is a post conviction hearing.

THE COURT: Yes.

MR. MOTTRAM: Well, I didn't understand that and there is a reason for my withdrawing the other argument. I had two petitions and one is I recently have recovered some files that show the appeal carried to the Supreme Court in 1963 was based on an impartial record and I want to go back before the Court on. That was a Writ of Error Coram Nobis that I last appeared before the Court on, and it wasn't my understanding this was a post conviction act. This type of Writ of Habeas Corpus—I thought this was for the plain Writ of Habeas Corpus.

THE COURT: I think it is very definitely post conviction. You entertain any different view, Brother Tevanian?

MR. TEVANIAN: I do entertain a different view. This is probably omitted from my subsequent Petition. I omitted matters that I felt were proper under a post conviction, and this particular Habeas Corpus I bring, I have brought only attacking the warrant and the arrest and the declaration of being a parole violator and I do not go to the sentence and the Court procedure at all, which I believe is post conviction. I am not attacking his original sentence in any way in my petition. I am only attacking the procedure by which he was declared a parole violator. That is why I felt it wasn't a post conviction.

THE COURT: I think I will have to ask you to deal with this at this mo-

---

2. Under Section 5502, post-conviction relief is available "provided that the alleged error has not been previously or finally adjudicated or waived in the proceeding resulting in the conviction or in any other proceeding that the petitioner has taken to secure relief from his conviction." 14 M.R.S.A. § 5502. Section 5507 provides "[a]ll grounds for relief claimed by a petitioner under this remedy must be raised by a petitioner in his original or amended petition, and any grounds not so raised are waived unless the State or Federal Constitution otherwise requires or any justice on considering a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition." 14 M.R.S.A. § 5507.

ment in making a decision as to what you want to do on the basis that I will undoubtedly view it as post conviction and your only remedy at that point might be an appeal on this point from my decision. I think in all fairness, I should indicate to you this is as I view it. I think that is the result we are led to by the statute, myself.

MR. TEVANIAN: I understand your position and I shall discuss it.

(Conference between Mr. Tevanian and Mr. Mottram.)

(Off-record discussion)

### RECESS

MR. TEVANIAN: For the record, it is our position here that we do not attack the judgment and conviction of 1960. We are now attacking his personal freedom as a parole violator so that whatever rights we may reserve in appeal as to whether or not this is a post conviction hearing, we would now like to avail ourselves of that reservation. We have elected to go ahead on that issue.

THE COURT: I think that makes it clear, Brother Tevanian, for the record * * *.

On appeal, the Supreme Judicial Court concurred in the presiding justice's view that the petition was one for statutory post-conviction relief. Mottram v. State, *supra,* 232 A.2d at 818. And in affirming the dismissal by the single justice of petitioner's most recent state habeas corpus petition, the Supreme Judicial Court agreed with the single justice that all the matters petitioner now seeks to raise could and should reasonably have been raised in the 1965 petition and were waived by petitioner's failure to do so. Mottram v. State, *supra,* 263 A.2d at 723.

Despite the presiding justice's specific warning of the risk of waiver at his 1965 habeas corpus hearing, petitioner testified at the evidentiary hearing before this Court that he did not understand what the justice was saying and that he "assumed he was talking only about them two, those two allegations there," mean-

ing the allegations contained in his original 1965 petition. He stated that his attorney, Mr. Tevanian, during the off-record conference at the hearing, did not fully explain to him the consequences of his proposed course of action. And he strenuously urges that in these circumstances the State has failed to establish a knowing and intentional waiver, meeting the standards of Fay v. Noia, *supra* and Johnson v. Zerbst, *supra.* Because Mr. Tevanian has since deceased, it has not been possible to obtain his version of what transpired during his conference with petitioner at the 1966 hearing. In light of the justice's explicit warning as disclosed by the transcript of that hearing, however, this Court can give no credence to petitioner's self-serving testimony. As recited elsewhere in this opinion, by 1966 petitioner had been involved in a sufficient number of court proceedings so that he can hardly be considered to have been unsophisticated in such matters. From the Court's personal observation of petitioner, it is apparent that he is of at least average intelligence and well deserves his reputation as a cunning "jailhouse lawyer." He was represented at the time by counsel of unquestioned competence and integrity. It is inconceivable that his counsel did not fully explain to petitioner the possible consequences of his action. The Court, therefore, finds that petitioner was fully aware of these consequences and that by deliberately bypassing the orderly procedures provided by the Maine post-conviction statute for raising the issues presented in his most recent state habeas petition and in his present petition in this Court, petitioner has forfeited his right to do so. Fay v. Noia, *supra* 372 U.S. at 438–439, 83 S.Ct. 822; Eskridge v. Rhay, 345 F.2d 778, 780–781 (9th Cir.), cert. denied, 382 U.S. 996, 86 S.Ct. 582, 15 L.Ed.2d 483 (1965); Watkins v. Crouse, 344 F.2d 927 (10th Cir. 1965). *See also* Henry v. Mississippi, 379 U.S. 443, 447–450, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Wong Doo v. United States, 265 U.S. 239, 241, 44 S.Ct. 524, 68 L.Ed. 999 (1924); *cf.* Sanders v. United States,

373 U.S. 1, 17–18, 83 S.Ct. 1068, 10 L.Ed. 2d 148 (1963).

## II

### The Merits

Although what has been said is sufficient to dispose of the present petition, because petitioner has never had a determination on the merits of the issues he raises concerning his 1960 conviction, the Court will dispose of them at this time in order to prevent continued harassment of the courts by further petitions.

*Contention A. The State's Knowing Use of Perjured Testimony At His Trial.*

■■ It is well settled that the State's knowing use of perjured testimony denies due process of law to an accused. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Pyle v. Kansas, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942); Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935). This principle applies even though the false testimony goes only to the credibility of a witness. Napue v. Illinois, *supra.* Nor is it necessary that knowledge of the false testimony be brought home to the prosecuting attorney himself. Curran v. Delaware, 259 F.2d 707 (3rd Cir. 1958), cert. denied, 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed. 2d 353 (1959); Smith v. Florida, 410 F.2d 1349, 1350–1351 (5th Cir. 1969). In the present case, however, petitioner has wholly failed to prove the perjury which he claims.

A brief review of the evidence presented at petitioner's trial is necessary to place petitioner's claims in an intelligible context. The State's case, which was supported by overwhelming evidence, was that during the night of July 1 or early morning of July 2, 1957, petitioner had stolen a 1954 Cadillac belonging to Hartley S. Staley and Wendell Perkins from near Staley's restaurant in Bridgton; that petitioner had taken the Cadillac to his home in Camden, where he had stored it for several weeks at a neighboring farm; and that on December 13, he had sold it to a Mr. and Mrs. Paul Thomas;

that to prove his ownership of the car, petitioner gave the Thomases a notarized bill of sale to him from "Anthony Rocco"; and that the name "Anthony Rocco" had been forged to the bill of sale by a friend of petitioner's, Edward L. Betts, who had accompanied petitioner to a Camden bank to have the bill of sale notarized by a bank officer. Staley, Perkins, the Thomases, Betts and personnel from the Camden bank, among others, all testified to the foregoing effect. The only evidence offered by petitioner was his own testimony. He testified in substance that Staley and Perkins represented to him that they were in financial difficulties and feared their creditors might attach the car; that petitioner offered to take the car and conceal it for them; that Staley and Perkins delivered the car to him in Bridgton; that he kept the car for them in the Camden area; that they later made a deal to sell the car to him; that it was Edward Betts who accompanied petitioner to the Camden bank and signed the name of Anthony Rocco to the notarized bill of sale; and that petitioner ultimately sold the car to the Thomases when he heard that Staley and Perkins had reported the car as stolen and had received payment of an insurance claim.

All of petitioner's perjury allegations relate to the testimony of Detective (now Major) Bernard K. Holdsworth, the Maine State Police officer in charge of the investigation, and are concerned with Holdsworth's testimony at petitioner's 1960 trial as to statements made by petitioner during two interrogations which occurred on December 30, 1957 ("the first interrogation") and January 28, 1958 ("the second interrogation"). Holdsworth and State Police Captain John Edward Marks conducted the first interrogation at the State Police headquarters in Augusta on the evening of petitioner's arrest. There is no record of this interrogation. The second interrogation took place a month later in the Cumberland County Attorney's office at Portland and was principally conducted by Holdsworth. Those present included

the county attorney and petitioner's counsel. This interrogation was recorded on discs, but because of mechanical difficulties, only an incomplete, and highly unsatisfactory, transcript is available.

■ Petitioner claims that Holdsworth's trial testimony was knowingly false in six respects:

(1) Petitioner's first claim relates to Holdsworth's testimony that at the first interrogation petitioner told him he obtained the stolen vehicle from Tony Rocco. Petitioner denies this. Holdsworth and Marks have consistently testified [3] that this was petitioner's story at the first interview. Their testimony is supported by the fact that Tony Rocco's name was on the bill of sale and by petitioner's own trial testimony. It is accepted by the Court. Any variance between petitioner's and the officers' testimony as to who first mentioned the name of Tony Rocco at the interview is plainly immaterial.

(2) Petitioner's second charge of perjury concerns Holdsworth's testimony that at the second interrogation petitioner admitted knowing Anthony Rocco. Petitioner claims he never admitted that he knew Rocco. The transcribed portion of the second interrogation reveals that petitioner first admitted knowing Tony Rocco, then denied knowing him, then, when it was disclosed that Rocco had been a fellow inmate of petitioner's at the Maine State Prison, he conceded that he "knew of" a Tony Rocco. During the course of this interrogation, petitioner changed his story many times. Such a variance, if any, as occurred in Holdsworth's testimony was clearly the result of the confusing and conflicting stories given by petitioner at the interview. Indeed, petitioner conceded, on cross-examination at his trial, that throughout the interview he was "bantering with words with Holdsworth." In any event, any discrepancy was certainly not of such magnitude as to be in any way prejudicial to petitioner.

(3) The third allegation of perjury relates to Holdsworth's testimony that when petitioner was confronted with Staley and Perkins at the second interrogation, he accused them of a conspiracy to defraud *the insurance company* by having petitioner hide the car and reporting it as stolen. Petitioner claims that he accused Staley and Perkins of a conspiracy to defraud *creditors,* and not the insurance company. Plainly, any discrepancy in Holdsworth's testimony, reflecting his recollection of what was said at the interview, was not such a material variance as in any way to prejudice petitioner. Furthermore, the transcript of the interview discloses that petitioner did confront Staley and Perkins with the fact that they had collected money from the insurance company after having reported the car as stolen.

(4) Petitioner's fourth charge of perjury can be quickly disposed of. Petitioner says that Holdsworth testified falsely that at the second interrogation petitioner stated that he had told the truth at the first interrogation. But the trial record discloses that Holdsworth in fact testified that petitioner told him: "the story that he had given me at the State Police headquarters on the night of December 30th wasn't the truth in its entirety, that he was now going to tell me the truth."

(5 and 6) Petitioner's last two claims of perjury can also be summarily dismissed. They arise out of Holdsworth's testimony that at the first interrogation petitioner stated he had owned nine cars in the two years prior to his arrest and that he had not had a notarized bill of sale made out for each and every one of these cars. Petitioner says that he told Holdsworth it *"seemed like* nine cars" he had owned during the previous two years and that he obtained a bill of sale only when he bought from a private dealer. Any discrepancy in Holdsworth's testimony in either of these respects was plainly immaterial and in no

---

3. Both Holdsworth and Marks testified at petitioner's two trials. Only Holds-worth testified at the evidentiary hearing before this Court.

way prejudiced petitioner. There is no merit whatsoever in petitioner's claim that the State of Maine knowingly used perjured testimony at his trial.

*Contention B. Illegal Arrest and Transportation, Deprivation of Right to Counsel, and Violation of Privilege Against Self-Incrimination.*

Petitioner contends that the "totality of circumstances" surrounding his arrest and interrogation on the night of December 30, 1957 was "so inherently coercive" that the testimony of Holdsworth and Marks as to what petitioner said on that night should have been excluded at his trial. There is no substance to this claim.

Since the events and trial with which the Court is concerned occurred long prior to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the rule of that case is not here applicable. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The sole issue presented is whether petitioner's statements during the interrogation were "voluntarily given" or the result of "overbearing" police tactics. Davis v. North Carolina, 384 U.S. 737, 739, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); *see, e. g.,* Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); Greenwald v. Wisconsin, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968); Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967). In the language of the Court of Appeals for this Circuit,

> Our task, therefore, is to apply a "substantive test of voluntariness" drawing on pre-*Escobedo* [Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)] and pre-*Miranda* case law on coerced confessions, to determine whether petitioner in this case has been "found guilty by trustworthy evidence in conformity with previously announced constitu-

tional standards." Johnson v. New Jersey, *supra.* Kerrigan v. Scafati, 364 F.2d 759, 763 (1st Cir.) cert. denied, 385 U.S. 953, 87 S.Ct. 335, 17 L.Ed.2d 231 (1966).

Applying this test, this Court cannot find a shred of evidence in this record that the statements made by petitioner to the officers on the evening of December 30, 1957 were the product of coercion or improper inducement, or that his "will was overborne." Davis v. North Carolina, *supra.* Petitioner was taken into custody by state and local police officers at his trailer home in Camden in the early evening of December 30. When the officers first arrived at petitioner's trailer, they told him they wanted to talk with him about the car he had sold to the Thomases and were going to take him downtown for that purpose. Although petitioner says he refused to go unless they had a warrant, the officers testified that he went voluntarily, and the Court accepts their testimony. He was taken to the Camden police station, where he was formally placed under arrest and handcuffed. Two officers then drove him to the Augusta State Police headquarters, arriving sometime between 8:30 and 9:00 p. m. To this point, no significant interrogation had occurred.[4]

Upon petitioner's arrival in Augusta, he was questioned by Holdsworth and Marks from about 9:00 p. m. until shortly before midnight, when he was taken to the Kennebec County jail. The interrogation lasted approximately three hours. He was not at any time abused, physically or mentally, or subjected to any force. There is no evidence that he was denied food or water; in fact, the officers testified that he was offered coffee and sandwiches. No promise, oral or written, was made to him. He was not threatened. Although petitioner says that at one point he asked for an attorney, the officers have no recollec-

---

4. Petitioner does not argue that his allegedly illegal arrest and transportation to Augusta tainted the subsequent interrogation. *See, e. g.,* Ker v. Illinois,

119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); Autry v. Wiley, 440 F.2d 799 (1st Cir. 1971).

tion of this. Petitioner says that he was upset and confused, and distrustful of Holdsworth because of his previous experiences with him.[5] But the uncontroverted evidence of petitioner's familiarity with the police environment and interrogation procedures belie these assertions. The evidence simply does not support petitioner's present claim that the admissions made by him at the Augusta interrogation were the result of any "overbearing by police authorities." Davis v. North Carolina, *supra.* Clearly, the "totality of the circumstances," Fikes v. Alabama, 352 U.S. 191, 197, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957), disclosed by the present record falls far short of reaching the "sustained pressure," Watts v. Indiana, 338 U.S. 49, 53, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949), of the "intensive police questioning," Leyra v. Denno, 347 U.S. 556, 561, 74 S.Ct. 716, 98 L.Ed. 948 (1954), which precluded the use of incriminating statements in cases such as Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Fikes v. Alabama, *supra;* Harris v. South Carolina, 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815 (1948); Turner v. Pennsylvania, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810 (1948); Ashcraft v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1943), upon which petitioner relies.

Applying the "substantive test of voluntariness," the Court concludes that petitioner's statements to the officers on the night of December 30, 1957 were freely and voluntarily made and were not the result of improper inducement or coercion.

*Contention C. Denial of Fair and Impartial Jury and Violation of Privilege Against Self-Incrimination.*

The jury returned its verdict of guilty on the larceny charge contained in the first count of the indictment at 3:00 p. m. The jurors were then excused until 7:00 p. m. that evening, at which time the Court proceeded with the trial of the recidivist charge contained in the second count. Because the Court was unable to obtain a fresh panel of jurors, four of the jurors who had sat on the first jury also sat on the second jury. The second count charged that petitioner had been previously convicted and sentenced to the State Prison in June 1952 for larceny of an automobile. Petitioner contends that because at the first trial the county attorney questioned him concerning the 1952 larceny conviction, even though he declined to answer on Fifth Amendment grounds,[6] the presence of these four jurors on the second jury constituted a denial of Due Process.

This contention can be quickly disposed of. In Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court has held that a single trial, before the same jury, of the substantive and habitual offender counts in an indictment, does not violate due process. *A fortiori,* this holding applies in the present case.[7]

---

5. Petitioner testified that Holdsworth had threatened to "get him" on a prior occasion and also had made derogatory remarks about petitioner's wife. Holdsworth denies having done so.

6. At the trial of the larceny count, the county attorney asked petitioner on cross-examination the following question:
 * * * and in 1952 were you again convicted of larceny of an automobile at Auburn, Maine?
 Mr. Tevanian: I will object to that, if your Honor please, and I would instruct this client that he has a right on this particular question to invoke the Fifth Amendment. For what purpose, I think the Court is aware.
 At this point, the county attorney did not press his question.

7. Even if this were not the rule, since petitioner did not answer the question asked of him at his first trial concerning his 1952 conviction, but instead invoked the Fifth Amendment, it is clear that he was not thereby prejudiced at the trial of the recidivist count. The county attorney did not comment on his refusal to answer the question, *compare* Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed 704 (1942), and the four jurors could no more in-

*Contention D. Denial of Trial by Jury.*

 Under Maine law, it is clear that the habitual offender statute requires the State to prove, beyond a reasonable doubt, that the defendant has been previously convicted of a felony and sentenced to the State Prison. State v. Mottram, *supra* 155 Me. at 405, 156 A.2d 383; State v. Beaudoin, 131 Me. 31, 158 A. 863 (1932). Petitioner argues that these issues were removed from the jury's consideration when the trial judge in his charge on the habitual offender count instructed the jury:

> So that you have before you the second count, and it is for you to decide on the evidence presented whether the respondent in this case is the same Robert Mottram that was convicted here today on the first count of this indictment. If he is not the same Robert Mottram and he is not the Robert Mottram that was convicted in the Androscoggin County Superior Court on the 17th day of June, 1952, then he is entitled to a verdict of not guilty.

and again when in response to a juror's question, the trial judge stated:

> The State here alleges that he was convicted—that this respondent was convicted of a felony in June, 1952. Now, he was convicted; he was sentenced. That case, in so far as it was then, was a closed matter. And if he was not brought into court today on the indictment for the larceny in July, 1957, he could not be sentenced on that previous case because he had already been sentenced, and it is only when a person has been sentenced to a state's prison on a felony and then commits another felony can you invoke the habitual criminal statute.

 It is sufficient to say that after reviewing the entire record, this Court is wholly satisfied that any constitutional error in the cited portions of the judge's charge was harmless beyond a reasonable doubt, and that petitioner therefore takes nothing by this point. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Subilosky v. Moore, 443 F.2d 334 (1st Cir., 1971); Martone v. United States, 435 F.2d 609, 611 (1st Cir. 1970). In the body of his charge, the judge correctly and comprehensively instructed the jury that the State had the burden of proving, beyond a reasonable doubt, that petitioner was convicted of the 1952 larceny and sentenced to the State Prison, emphasizing the State's burden to prove that petitioner was the same Robert H. Mottram who was so convicted and sentenced. Furthermore, the evidence was overwhelming that petitioner had previously been convicted of the 1952 larceny. The Androscoggin County Clerk of Courts brought into court the Superior Court docket for that county and testified to the conviction and state prison sentence of a Robert H. Mottram for grand larceny at the June 1952 term of court. The Chief Deputy Sheriff of Androscoggin County then testified positively that he was acquainted with petitioner; that he was in the courtroom when Mottram was sentenced; and that petitioner was the same Robert H. Mottram who was convicted and sentenced for the crime of grand larceny at the June 1952 term of the Androscoggin County Superior Court. Petitioner offered no evidence. Clearly, petitioner was in no way prejudiced by the error in the judge's charge of which he now complains.

*Contention E. Bias of the Trial Judge.*

Petitioner, with the advice of counsel, waived this contention at the evidentiary hearing held by this Court on March 17, 1971.

---

fer guilt from his invocation of the Fifth Amendment at his first trial than from his failure to testify at all at his second trial. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, reh'g denied, 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965).

*Contention F. Unconstitutionality of the Habitual Offender Statute.*

■ Petitioner's contention that Maine's habitual offender statute is unconstitutional requires no extended discussion. Such statutes have been consistently sustained by the Supreme Court against contentions that they violate constitutional strictures dealing with double jeopardy, *ex post facto* laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities. Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912); McDonald v. Massachusetts, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); Moore v. Missouri, 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895). *See* Spencer v. Texas, 385 U.S. 554, 559–560, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). As the Court stated in Oyler v. Boles, *supra,* " * * * the constitutionality of the practice of inflicting severer criminal penalties upon habitual offenders is no longer open to serious challenge." 368 U.S. at 451, 82 S.Ct. at 503.

*Contention G. Denial of Fair and Impartial Trial.*

■ Petitioner contends that his constitutional rights were violated at the trial of the larceny charge because the county attorney asked him questions concerning prior crimes of which he had not been convicted. The record discloses that petitioner took the stand and testified in his own defense at the trial of the larceny count. To impeach his credibility, the county attorney on cross-examination questioned petitioner concerning prior crimes of which he had been convicted, a permissible procedure under Maine law. State v. White, 217 A.2d 212, 215–217 (Me.1966). Without objection from his counsel, petitioner readily admitted convictions in 1940 for breaking, entering and larceny, and for

larceny of a motor vehicle; in 1945 for theft of a motor vehicle and for attempting to escape jail; and in 1950 for uttering a forged instrument. During the course of this interrogation, the county attorney, who was reading from a State Police "rap sheet," mistakenly asked petitioner whether he had also been convicted in 1950 of escaping jail and larceny of a motor vehicle. Petitioner denied that he had, stating that both of these charges had been filed without sentencing. Petitioner's counsel began to request, but did not press for, a cautionary instruction to the jury. The county attorney dropped the inquiry. Petitioner was also asked whether he was convicted of petty larceny in 1952. He denied this conviction. The county attorney apologized, stating that the record he was holding must be in error.[8]

■ There is no substance to petitioner's claim that he was denied any constitutional right by these questions. It is settled that the rule of evidence concerning impeachment by prior convictions is just that, a rule of evidence, and nothing more; it does not rise to constitutional proportions. *See, e. g.,* Spencer v. Texas, *supra,* 385 U.S. at 561–562, 87 S.Ct. 648; McCormick, Evidence § 43 (1954). The record is clear that the county attorney was acting in complete good faith, no cautionary instruction was requested, and the judge's charge made it clear to the jury that only convictions were admissible to impeach credibility and that even convictions were not admissible to prove that petitioner had committed the crime for which he was being tried. *Cf.* Beasley v. United States, 94 U.S.App.D.C. 406, 218 F.2d 366, 368–369 (1954), cert. denied, 349 U.S. 907, 75 S.Ct. 584, 99 L.Ed. 1243 (1955). In light of the convictions which were admitted by petitioner, and which were properly brought to the jury's attention, it is inconceivable that petitioner suffered any prejudice. Plainly, this is another instance where any constitutional error was harmless beyond

---

8. In fact, the record discloses a conviction in the District Court, an appeal, but no disposition on appeal.

a reasonable doubt. Chapman v. California, *supra;* Subilosky v. Moore, *supra.*

*Contention H. Denial of Equal Protection by Selective Enforcement of the Habitual Offender Statute.*

 Petitioner claims that his prosecution under the habitual offender statute denied him Equal Protection of Law under the rule of Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). He argues that his prosecution under the statute was motivated by Holdsworth's personal animosity and that although the habitual offender statute has been in effect for many years, he is one of only six or seven defendants who have been prosecuted and convicted thereunder. The evidence adduced at the hearing before this Court supports the latter allegation.[9] The record, however, falls far short of establishing the purposeful discrimination necessary to meet the *Yick Wo* requirement that a law has been "applied and administered by public authority with an evil eye and an unequal hand." Yick Wo v. Hopkins, *supra* at 373–374, 6 S.Ct. at 1073. The evidence discloses that although Holdsworth was involved, the ultimate responsibility for petitioner's prosecution under the statute lay with the county attorney and not Holdsworth, and that the county attorney's decision to do so was made only after a detailed review of petitioner's prior record and conduct in consultation with the police and State Prison officials. Nor does the evidence support petitioner's numerous allegations of Holdsworth's personal hostility: the record reveals no more than that Holdsworth was an aggressive and dedicated police officer carrying out his duties as a public official charged with the investigation and prevention of crime. In short, petitioner has failed to prove that his prosecution under the habitual offender statute was deliberately based upon any arbitrary, illegal or otherwise unjustifiable standard. The law is clear that the mere fact other offenders have not been prosecuted does not constitute a denial of Equal Protection; intentional or purposeful discrimnation must be shown. Oyler v. Boles, *supra;* Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Yick Wo v. Hopkins, *supra;* Moss v. Hornig, 314 F. 2d 89, 92–93 (2d Cir. 1965); United States v. Rickenbacker, 309 F.2d 462, 464 (2d Cir. 1962), cert. denied, 371 U.S. 962, 83 S.Ct. 542, 9 L.Ed.2d 509 (1963); Washington v. United States, 130 U.S. App.D.C. 374, 401 F.2d 915, 924–925 (1968); United States v. Maplewood Poultry Co. et al., 320 F.Supp. 1395 (D. Me.1970).

\* \* \*

Petitioner has been denied no federal constitutional right by the State of Maine in any of the respects alleged by him in his present petition.

It is therefore ordered that the petition is dismissed and the writ denied.[10]

---

9. The Cumberland County Attorney who prosecuted petitioner in 1960 testified that during his six-year tenure only eight or twelve defendants had been indicted under the habitual offender statute, and that only in petitioner's case had the prosecution been pressed and a conviction obtained. He stated that the other habitual offender charges had probably been dropped when defendants pleaded guilty to the substantive offenses charged. Respondents were able to cite only six reported opinions of the Maine Court involving appeals from habitual offender convictions.

10. Petitioner has been ably represented throughout these proceedings by court-appointed counsel, S. Mason Pratt, Jr., Esquire, of the firm of Pierce, Atwood, Scribner, Allen and McKusick, Portland. Mr. Pratt's service has been in the highest tradition of the bar. His conscientious efforts on behalf of petitioner have greatly assisted the Court.